**STATE of Minnesota, Respondent,**

v.

**Frank Burstad CONKLIN, Appellant.**

**No. C3–86–1592.**

Court of Appeals of Minnesota.

May 26, 1987.

---

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, and Paul R. Jennings, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, and Mark F. Anderson, Asst. State Public Defender, University of Minnesota, Minneapolis, for appellant.

Considered and decided by CRIPPEN, P.J., and LESLIE and MULALLY, JJ.,* with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant Frank Conklin was convicted of first degree arson and negligent fire. Conklin appeals his conviction claiming evidence of his guilt was insufficient and that certain evidentiary rulings by the trial court denied his right to a fair trial. We affirm.

## FACTS

On the evening of August 3, 1984, appellant Frank Conklin's home burned following a natural gas explosion. The explosion was caused by a gas leak through a crack in a flexible metal connector which provided natural gas to the clothes dryer in Conklin's basement. Conklin subsequently was charged with first degree arson in violation of Minn.Stat. § 609.561, subd. 1 (1984) and negligent fire in violation of Minn.Stat. § 609.576(b)(4) (1984). Following a jury trial, Conklin was convicted on both counts and sentenced to 24 months in prison.

Conklin was unemployed from the spring of 1983 until June, 1984. Two months be-

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

fore the fire he obtained a condominium sales job with salary tied solely to commissions, but had made no sales. The monthly income of Conklin's wife barely covered the family's basic expenses, and Conklin had sold a number of personal property items to supplement this income. Although he admitted finances were tight, their debts were not in arrears at the time of the fire.

Conklin's house had been for sale about seven months prior to the fire because they wished to move to the eastern United States. Conklin claimed that about three weeks before the fire he smelled gas in the basement. Allegedly believing the leak was in the dryer, Conklin shut off the valve (upper) in the gas line located above the dryer. This line led directly to the flexible metal connector attached to the dryer. An additional valve (lower) was attached at the end of the flexible connector at the point where the connector was attached to the dryer. Once he shut off the upper valve, the gas smell dissipated.

The weekend of the fire, Conklin and his family planned to visit his sick mother in Thief River Falls, Minnesota. The morning of the fire Conklin was alone in the house. The day of the fire, when the family was in the car about to depart for the weekend, Conklin made one last trip into the house allegedly to retrieve a pair of sunglasses. They did not return from Detroit Lakes, Minnesota until later that evening, after they were informed of the explosion and fire.

At the scene of the fire Conklin gave investigators a number of statements. He told investigators he smelled gas in the basement three weeks before the fire, but stated he was "scared to death" to turn the gas back on or attempt to repair the dryer.

Investigators soon discovered the crack in the flexible connector as the fire's cause, and also found the upper gas valve open while the valve on the flexible connector leading to the dryer was closed. Although Conklin originally told investigators the upper gas valve was closed, when investigators told him the upper valve was open, he then told them of his alleged attempt to repair the dryer one week before the fire.

In an attempt to repair the dryer, Conklin claimed he turned on the upper gas valve and pulled the dryer out from the wall. Since he believed the gas leak was in the dryer, following the attempted repair he only shut off the lower gas valve. Although the upper valve remained open, Conklin claimed he could not smell gas. He stated that he did not push the dryer back into its original position until the day of the fire, and this apparently reopened or unpinched the crack causing the leak.

The State, however, contends Conklin was aware of the leak, and made up the "repair" story to explain away earlier inconsistent statements and cover the fact the upper gas valve was left open the day of the fire. The State claimed Conklin, aware of the leak, intentionally opened the upper valve when he ran into the house immediately before they left for the weekend. The State contends he impliedly admitted guilt when confronted by investigator's suspicions of arson and questioned in reference to insurance payments. During questioning, Conklin stated "if I tell you I won't get paid." Conklin claims this was taken entirely out of context during discussions over insurance coverage.

A number of investigators and experts testified at trial. The State's expert testified that the flexible connector fracture was not caused by normal wear and tear or age, but by repeated up and down movements stressing the pipe. He cited a number of plausible ignition sources and calculated the time of explosion as consistent with the time Conklin and his family left the house. He stated the fracture was not significantly enlarged in the blast and that gas escaping the crack would have been immediately noticeable by sound and smell upon opening the upper gas valve.

Conklin's expert testified as to a much smaller gas leak. He concluded the fracture in the connector originally was small but enlarged in the explosion. Because the crack was small, his opinion was that escaping gas was not readily noticeable. Conklin's expert claimed the enlargement of the fracture was caused by stress on the connector when the explosion allegedly lift-

ed the house off its foundation. The State claimed the evidence demonstrated the house remained on its foundation during the explosion.

At the close of the evidence, Conklin's motion for a judgment of acquittal was denied. After the jury found him guilty on both counts, his subsequent motions for a judgment of acquittal or new trial also were denied. Conklin appeals the convictions.

## ISSUES

1. Was the evidence sufficient to convict Conklin of arson in the first degree and negligent fire?

2. Was Conklin denied a fair trial by erroneous evidentiary rulings of the trial court?

## ANALYSIS

When reviewing a criminal conviction, this court must consider the evidence in the light most favorable to the State. *State v. Wahlberg*, 296 N.W.2d 408, 411 (Minn. 1980). We must assume the jury believed the State's witnesses and disbelieved everything which contradicted their testimony. *Id.*

Conklin's conviction rests upon circumstantial evidence. In regard to circumstantial evidence, the Minnesota Supreme Court has held:

The circumstantial evidence in a criminal case is entitled to as much weight as any other kind of evidence so long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of his guilt.

*State v. Berndt*, 392 N.W.2d 876, 880 (Minn.1986) (citations omitted). However, a jury is in the best position to evaluate circumstantial evidence. *State v. Daniels*, 380 N.W.2d 777, 781 (Minn.1986). Giving due regard to the presumption of innocence and to the State's burden of proving guilt beyond a reasonable doubt, if the jury could reasonably have found the defendant guilty, the verdict will not be reversed. *State v. Norgaard*, 272 Minn. 48, 52, 136

N.W.2d 628, 632 (1965). Conklin claims the evidence fails to establish guilt beyond a reasonable doubt and is more consistent with a rational hypothesis demonstrating innocence. He denies financial motive, means, or opportunity to commit arson.

■ Although Conklin had plausible explanations for the majority of the circumstantial evidence, the totality of the evidence demonstrating motive, means, and opportunity is sufficient to sustain the conviction. The evidence suggested Conklin's difficult financial situation and attempts to sell the home as a basis for motive. Moreover, the evidence found at the scene of the fire, Conklin's suspicious actions prior to the fire, and his inconsistent statements to investigators establish means and opportunity to commit the crimes. The jury could reasonably have found Conklin guilty. We hold the circumstantial evidence was sufficient to support the verdict.

2. Rulings on evidentiary matters rest within the sound discretion of the trial court. *State v. Anderson*, 370 N.W.2d 653, 664 (Minn.Ct.App.1985). Conklin asserts several evidentiary rulings of the trial court deprived him of a fair trial. We disagree.

a) *Admission of Melted Candle Evidence*

■ Conklin contends the prejudicial effect of references to melted candle wax at trial outweighed its probative value when experts were unable to conclude the candle was lit or was the source of the ignition. The trial court originally granted Conklin's motion in limine to exclude any opinion that the lit candle caused the fire, but held witnesses could testify as to the melted wax they observed. Testimony was limited to observations of wax at the scene, and the State's experts identified a number of equally plausible ignition sources. Conklin was given the chance to explain the existence of wax through cross-examination of State witnesses and through his own testimony. Because the State complied with the court's order, and Conklin also explained the presence of the wax, he was not prejudiced.

## b) *Statements of Conklin's Wife*

■ At the omnibus hearing Conklin asserted his spousal privilege and the court ordered the State to refrain from referring to statements made by Conklin's wife. He alleges the State repeatedly referred to his wife's statements, thus causing the jury to speculate why his wife was not at trial. Most of the alleged references to his wife's statements were in fact questions relating to Conklin's observations of her actions and questions relating to his credibility. On at least two occasions the State referred to formal statements made by Conklin's wife. However, Conklin only objected to the questioning once, and that objection made no reference to the spousal privilege. The fact that the defendant fails to object to prosecutorial misconduct suggests the defendant did not consider it prejudicial. *State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984). The failure to object results in the forfeiture of the right to consider the issue on appeal. *Id.*

## c) *Refusal to Admit All Pretrial Statements*

■ Conklin also argues prejudice resulted from the admission of certain pretrial statements into evidence to the exclusion of his deposition testimony. However, Conklin was allowed to read and cross-examine relative portions of the statements and deposition used by the State. Exceptions to the "rule of completeness" cited by Conklin hold when the prosecution only introduces a portion of the defendant's statement, the defendant has the right to introduce additional portions of that statement. *United States v. Smith*, 794 F.2d 1333, 1335 (8th Cir.1986). There is no right to introduce portions which are irrelevant or unexplanatory to the portions introduced by the prosecution. *Id.* Here, Conklin was given the right to highlight relevant portions of the transcript. Admission of the entire transcript introduces irrelevant portions in conflict with the *Smith* exception. Moreover, *Smith* applied to a post-arrest statement, where this deposition was taken long before Conklin's arrest. The trial court did not err in refusing to admit the entire deposition.

## d) *Statements Made During Polygraph Examination*

■ The trial court, aware of the inadmissibility of reference to polygraph exams, allowed limited questioning regarding statements Conklin made to a polygraph examiner. To test Conklin's credibility, the State cross-examined him on a statement in which he agreed that he distorted some answers to make them look right. Conklin thus finds prejudice because this answer may have referred to physical responses to foul up the polygraph. Since he could not explain the context of the response, he claims prejudice.

We are troubled by any reference to statements given during polygraph exams. However, in this particular case, given the significant number of investigators and statements, it was unlikely the jury could infer the statement was given during a polygraph exam. The questioning merely tested credibility, and Conklin's claim that he could not remember making such a statement made further reference to the exam unnecessary. Since no identifiable reference was made to the exam, cases holding that indirect or direct evidence of a lie detector test are inadmissible thus are distinguishable. For example, in *State v. Perry*, 274 Minn. 1, 12–13, 142 N.W.2d 573, 580 (1966) the court refused to permit favorable inferences to be drawn either indirectly or directly from specific and identifiable references to a lie detector test during trial. Under the particular circumstances of the present case, the trial court did not err in admitting this limited testimony.

## e) *Evidence of Insurance Proceeds*

■ Finally, Conklin finds prejudice from a trial court ruling preventing him from showing the jury his insurance company had reimbursed him for the fire damage. We agree with the trial court's finding that the insurance payments are totally irrelevant to a finding of guilt or innocence.

Conklin relies upon the doctrine of curative admissibility to admit the insurance payment. However, the doctrine allows a

party to present otherwise inadmissible evidence on an evidentiary point when the opponent has "opened the door" by introducing similarly inadmissible evidence on the same point. *Busch v. Busch Construction, Inc.*, 262 N.W.2d 377, 386 (Minn. 1977). None of the evidence presented by the State referred to the insurance payments, and thus the door was never opened to Conklin under the doctrine of curative admissibility.

### DECISION

The circumstantial evidence was sufficient to convict appellant of arson and negligent fire. In addition, the trial court's evidentiary rulings were not erroneous and did not deny appellant his right to a fair trial.

Affirmed.