**STATE of Minnesota, Appellant,**

v.

**Thomas Allen ZAIS, Respondent.**

No. A10–1020.

Court of Appeals of Minnesota.

Nov. 30, 2010.

Lori Swanson, Attorney General, St. Paul, MN; and Paul D. Baertschi, Tallen & Baertschi, Minneapolis, MN, for appellant.

William Ward, Fourth District Chief Public Defender, James A. Kamin, Assistant Public Defender, Minneapolis, MN, for respondent.

Considered and decided by CONNOLLY, Presiding Judge; LANSING, Judge; and KALITOWSKI, Judge.

## OPINION

LANSING, Judge.

This appeal is from the district court's pretrial order in a prosecution for disorderly conduct, concluding as a matter of law that, absent Thomas Zais's consent, his wife, Debra Zais, may not testify against him. Because we conclude that Debra Zais's testimony comes within the exception to the marital testimonial privilege in Minn.Stat. § 595.02, subd. 1(a) (2008), which permits spousal testimony in a criminal action or proceeding for a crime committed by one spouse against the other, we reverse and remand.

## FACTS

The facts relevant to this appeal are based on police reports admitted by stipulation and a written offer of proof that relies on Debra Zais's recorded statement to Maple Grove police. For purposes of determining the applicability of the marital testimonial privilege, these facts are undisputed.

Respondent Thomas Zais (Zais), his wife Debra Zais, and their fifteen-year-old daughter live in Maple Grove. The disorderly conduct charge at the center of this appeal stems from a November 15, 2009 incident in the driveway of their house, in front of their attached garage. About 6:20 p.m. Debra Zais called the Maple Grove police and reported that Zais had been drinking, was in the driveway in his pickup truck, and was trying to break down the garage door.

One of the officers responding to the call had been at the Zaises' house the previous evening in response to a phone call by Debra Zais reporting that Zais was arguing with, and had pushed, their daughter. Police told Debra Zais that the pushing conduct was insufficient to support a criminal charge. After the altercation with his daughter, Zais left the house. Debra Zais, who feared for her safety and the safety of her daughter, removed the garage-door opener from Zais's pickup so he could not enter the house.

Zais called his wife at the house on the afternoon of November 15 and told her that he was coming to the house and would break in or do whatever was necessary to gain entry. When Debra Zais saw him attempting a forcible entry, she called 911 and the police arrived at the house around 6:30 p.m.

The first officer to arrive saw the pickup in the driveway and saw Zais standing by the garage door. The officer also saw that "square panels on the garage door had been knocked out." Zais told him that Debra Zais would not let him in and that he had knocked out the panels to gain entrance to the house.

After Zais said that he had consumed alcohol, the officer administered field sobriety tests, which Zais failed. A preliminary breath test indicated that Zais had a .31 alcohol concentration. The officers told Zais that he was under arrest. He refused to comply with the officers' requests to put his hands behind his back and started to run away. After running a short distance, Zais turned to face the officers and "got into a fighting position with clenched fists." The officers again told him that he was under arrest. Following a sequence of Zais's yelling and failing to comply with directives, police discharged a Taser. When Zais fell to the ground, the police handcuffed him and placed him in the squad car. In the car he twice hit his head against the interior, and, because of the resulting head injuries, was transported by ambulance to North Memorial Hospital. A consensual blood test registered an alcohol concentration of .23.

The state charged Zais with second-degree driving while impaired (DWI), third-degree DWI, obstruction of legal process or arrest, careless driving, and disorderly conduct. In pretrial discovery, the state notified Zais that Debra Zais was a voluntary witness in the proceeding. Zais moved to exclude her testimony based on the marital testimonial privilege in Minn. Stat. § 595.02, subd. 1(a) (2008).

The state and Zais submitted memoranda on the applicability of the marital testimonial privilege and, at the direction of the district court, the state submitted an offer of proof setting forth the substance of Debra Zais's proposed testimony. Following submission of the memoranda and argument, the district court concluded that disorderly conduct is not a crime that creates "a personal injury sufficient to destroy the spousal privilege," and therefore, as a matter of law, Debra Zais was precluded from testifying against Zais without his consent.

The state appeals this pretrial order. In his response brief, Zais raises an additional issue, characterized as a "structural error," contending that the case should be dismissed for prosecutorial impropriety in the state's decision to appeal.

## ISSUES

I. Does the exception to the marital testimonial privilege provided in Minn. Stat. § 595.02, subd. 1(a), for "a criminal action or proceeding for a crime committed by one against the other" apply to a prosecution for disorderly conduct when a spouse, who is the complaining witness, is adversely affected by the conduct underlying the complaint?

II. Did the prosecutor's decision to appeal this case inject structural error that requires dismissal of the appeal?

## ANALYSIS

### I

Minnesota Rule of Criminal Procedure 28.04 allows the state to appeal pretrial orders, subject to some restrictions. To prevail in a pretrial appeal, the state must show clearly and unequivocally that the order will have a critical impact on its ability to prosecute the case, and that the order constitutes error. *State v. McLeod*, 705 N.W.2d 776, 784 (Minn.2005). The critical-impact requirement is satisfied if the suppression of evidence destroys the prosecution's ability to prosecute or "significantly reduces the likelihood of a successful prosecution." *State v. Scott*, 584 N.W.2d 412, 416 (Minn.1998). We consider the state's evidence as a whole in deciding what impact the exclusion of evidence will have on the state's case. *State v. Zanter*, 535 N.W.2d 624, 631 (Minn.1995).

### Critical Impact

Significantly, Zais does not dispute the critical impact of the excluded testimony. And the record, although limited, establishes that the state would rely heavily on Debra Zais's testimony to prove that Zais engaged in disorderly conduct, defined by statute as "offensive, obscene, abusive, boisterous, or noisy conduct" or "language tending reasonably to arouse alarm, anger, or resentment in others." Minn.Stat. § 609.72, subd. 1(3) (2008).

The record indicates that Debra Zais is the only eyewitness to Zais's conduct and that her testimony, particularly her telephone conversation with Zais, would bear directly on a determination of whether Zais "[knew], or [had] reasonable grounds to know that [his actions would], or [would] tend to, alarm, anger or disturb others." *Id.* Without Debra Zais's testimony the likelihood of a successful prosecution would be significantly reduced. *See Scott,* 584 N.W.2d at 416 (recognizing critical impact can be satisfied not only if suppressed evidence destroys prosecution's case but if likelihood of successful prosecution is significantly reduced). We conclude that the order will have a critical impact on the state's ability to prosecute the case, and we turn to the question of whether the district court's order on the applicability of the marital testimonial privilege was in error.

### Marital Privilege

■ Under Minnesota law, "[a] husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage." Minn.Stat. § 595.02, subd. 1(a). This exception to the general rule that any "person of sufficient understanding" may

testify in a judicial proceeding is commonly referred to as the "marital privilege," and this privilege also has exceptions. *Id.* One exception provides that the marital privilege does not apply "to a criminal action or proceeding for a crime committed by one [spouse] against the other." *Id.* We agree with the district court's statement that "[t]he crux of the issue of the applicability of the spousal privilege is whether the charge of [d]isorderly [c]onduct may be considered a crime committed against [Debra] Zais." If it is a crime "committed against" his wife, then Zais cannot invoke the privilege to prevent her from testifying.

■ Court decisions applying Minnesota's marital privilege distinguish between the general prohibition against testimony (referred to as the testimonial privilege) and the specific prohibition against communication testimony (referred to as the communications privilege). *E.g., State v. Gianakos,* 644 N.W.2d 409, 416 (Minn. 2002). In this appeal the testimonial privilege is at issue, and more specifically, the exception to the privilege that makes it inapplicable "to a criminal action or proceeding for a crime committed by one [spouse] against the other." Minn.Stat. § 595.02, subd. 1(a). "The burden of proving the applicability of the marital privilege rests on the spouse who invokes the privilege." *State v. Palubicki,* 700 N.W.2d 476, 483 (Minn.2005).

■■ Ordinarily, "[t]he availability of a privilege is an evidentiary ruling to be determined by the [district] court and reviewed on appeal for an abuse of discretion." *Id.* at 482. But the district court's evidentiary ruling is based on its interpretation of the statutory phrase "a crime committed by one against the other" to mean that there must be personal injury for the exception to apply and that "[d]is-

orderly [c]onduct does not create a personal injury sufficient to destroy the spousal privilege afforded by [section] 609.72." Because statutory interpretation is a question of law, we review the ruling de novo. *State v. Mauer*, 741 N.W.2d 107, 111 (Minn.2007).

■■■■ The goal of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2008). To determine legislative intent we look first to the specific language of the statute. *State v. Gorman*, 546 N.W.2d 5, 8 (Minn.1996). If the statute's language is clear, "statutory construction is neither necessary nor permitted and [we] apply the statute's plain meaning." *Am. Tower, L.P. v. City of Grant*, 636 N.W.2d 309, 312 (Minn.2001). But if the statute is not clear—and is ambiguous—we apply the canons of construction. *Id.*; Minn.Stat. § 645.16.

The state and Zais present competing interpretations of the exception to marital privilege for "crime[s] committed by one [spouse] against the other." Zais's interpretation, which was adopted by the district court, relies on the specific elements of a disorderly conduct offense to conclude that it is not a crime that is committed by one spouse against the other. This interpretation also relies on a concept of the public nature of disorderly conduct in contrast to the private nature suggested by the phrase "crime committed by one against the other" as it relates to conduct between spouses. Additionally, this interpretation reads "crime . . . against the other" to require "personal injury." It essentially interprets the exception to apply to a category of crimes or criminal proceedings that inherently involve a personal crime against another. This interpretation, although not literally drawn from the statute, is reasonable.

The state's interpretation that disorderly conduct, depending on its facts, may constitute a "crime committed by one [spouse] against the other" is also reasonable. The statute's use of the word "crime" is a broad reference that does not limit the term to a specific category of crimes and could reasonably be read to mean any crime, including disorderly conduct, if it was committed against a spouse. And, it is reasonable to interpret a privilege narrowly and its exceptions broadly. *See U.S. v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974) (stating that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth"); *Larson v. Montpetit*, 275 Minn. 394, 402, 147 N.W.2d 580, 586 (Minn.1966) (recognizing that "evidentiary privileges constitute barriers to the ascertainment of truth and are therefore to be disfavored and narrowly limited to their purposes").

Because the statute is susceptible to more than one reasonable interpretation it is ambiguous, and we apply the canons of construction to ascertain legislative intent. *See Am. Tower, L.P.*, 636 N.W.2d at 312 (stating statute is ambiguous if it is subject to more than one reasonable interpretation); Minn.Stat. § 645.16 (identifying list of considerations to resolve ambiguity). In construing an ambiguous statute, our rules of statutory construction "permit a broad review of the purpose of and occasion for the statute." *Mauer*, 741 N.W.2d at 113. To determine legislative intention we consider, among other factors, the "occasion and necessity for the law," "circumstances under which it was enacted," "mischief to be remedied," "object to be obtained," and "consequences of a particular interpretation." Minn.Stat. § 645.16.

The marital privilege has its origins in the common law. *Trammel v. United*

*States*, 445 U.S. 40, 44, 100 S.Ct. 906, 909, 63 L.Ed.2d 186 (1980); *State v. Frey*, 76 Minn. 526, 528, 79 N.W. 518, 518 (1899). The common-law rule emerged from two canons of medieval jurisprudence that are today long abandoned: (1) because of his perceived interest in the proceeding, an accused was prohibited from testifying on his own behalf and (2) because husband and wife were viewed as a single legal entity and a wife did not have a discrete legal status, the husband was the entity for legal purposes. *Trammel*, 445 U.S. at 44, 100 S.Ct. at 909. The result was that wives were prohibited from testifying when their husbands were defendants. *Id.* Over time this rule of absolute disqualification evolved into one of privilege. *Id.*

In Minnesota the common-law privilege prevented either spouse from testifying "for or against each other in any legal proceeding to which the other was a party." *Frey*, 76 Minn. at 528, 79 N.W. at 518. But the common law recognized an exception "in all cases of personal injuries committed by [one] against the other." *Id.* at 528, 79 N.W. at 519. Although the scope of this exception and its specific phrasing was never precisely settled, the source of the exception was a general concept of public justice and a recognition that enforcing the privilege without the exception would deny an injured spouse a remedy. *Id.*; 8 Wigmore, Evidence § 2239, n. 1 (McNaughton rev.1961). Significantly, the Minnesota Legislature did not adopt the "personal injury" language when it codified the common-law exception. *See* Gen. St. 1851, c. 95, § 53 (omitting any reference to "personal injury").

The mischief to be remedied and the object to be obtained have evolved over time. Minnesota's jurisprudence initially, and for many years, justified the marital testimonial privilege on the ground that it furthers the public policy of protecting the marriage relationship—both in avoiding the corruption to marital harmony that adversarial positions would cause and in avoiding the general corruption to public morality. These dual concepts are reflected in the supreme court's observation that Minnesota "recognized the burden which antagonistic interests impose upon the intimate relations of husband and wife and the harm to the public which results from marital discord, and ha[s], as a general rule, refused for this reason to permit one spouse to testify against the other without the latter's consent." *Gianakos*, 644 N.W.2d at 416 (quoting *State v. Feste*, 205 Minn. 73, 74–75, 285 N.W. 85, 86 (1939)).

This less-than-flexible application of the privilege and its underlying assumption that it protects marital harmony produced judicial results that at times seemed to frustrate the policy the privilege was presumed to further. For example, the decision in *Gianakos* declining to adopt a "sham marriage" exception to the testimonial marital privilege under circumstances in which the legitimacy of the marriage was questioned, emphasized that "a strong showing is required to conclude that the marriage protected" is "so empty" that it would "render the purpose of the privilege valueless." *Id.* at 418; *see also Feste*, 205 Minn. at 75, 285 N.W. at 86–87 (holding that marital privilege applied to bar wife's testimony in claim, brought before marriage, against husband for fathering her illegitimate child); *Frey*, 76 Minn. at 527, 530, 79 N.W. at 518–19 (holding that marital privilege applied to bar wife, who was victim, from testifying against defendant husband charged with "carnally knowing a female child under the age of [sixteen] years," even though crime occurred before marriage).

Despite this general proposition that the privilege protects marital harmony, courts

began to question whether aspects of this policy-driven doctrine had become anachronistic and even harmful to the administration of justice. *See Trammel,* 445 U.S. at 44–49, 100 S.Ct. at 909–12 (summarizing criticism of rule and state law changes to marital privilege). The Supreme Court recognized in *Trammel* that "we cannot escape the reality that the law on occasion adheres to doctrinal concepts long after the reasons which gave them birth have disappeared and after experience suggests the need for change." *Id.* at 48, 100 S.Ct. at 911. Determining that the "ancient foundations for so sweeping a privilege have long since disappeared," and that the modern justification of preserving marital harmony is unpersuasive, the Court modified the federal marital-privilege rule and vested the testimonial privilege entirely in the witness spouse. *Id.* at 52–53, 100 S.Ct. at 913–14. The Court also recognized that the use of the privilege weighed substantially against positive societal considerations to seek the truth in judicial proceedings and to prosecute wrongdoing. *Id.*

Minnesota has also considered the competing policy interests of protecting the marital relationship and ascertaining the truth in its modern interpretations of the marital communication privilege. In *Hannuksela,* the court determined that protecting marital harmony "without erecting artificial 'barriers to the ascertainment of truth' " is served through a narrow interpretation of the meaning of confidential interspousal "communication." *State v. Hannuksela,* 452 N.W.2d 668, 676 (Minn. 1990) (quoting *Montpetit,* 275 Minn. at 402, 147 N.W.2d at 586). Although *Hannuksela's* narrowing interpretation does not directly address the marital testimonial privilege at issue in this appeal, it is consistent with the more modern approach embodied by the Supreme Court in *Trammel.*

The last criterion that we consider to resolve statutory ambiguity is the consequences of the competing interpretations. Zais's argument, distinguishing public and private crimes and requiring "personal injury," is focused on distinguishing categories of offenses, while the state's interpretation focuses on the conduct underlying the crime. We agree that it is the underlying conduct that determines whether there is any marital harmony to protect, and therefore any purpose to be served by the privilege.

Thus, we conclude that the state's interpretation more reasonably advances the modern approach of properly balancing two conflicting goals: protecting the marital relationship through application of the privilege and ensuring that our judicial processes determine the truth. Commentators have suggested that the use of the marital privilege to exclude testimony for the supposed purpose of assuring marital harmony may, in many circumstances, miss the mark:

> [I]f the promotion of marital peace, and the apprehension of marital dissension, are the ultimate ground of the privilege, it is an overgenerous assumption that the wife who has been beaten, poisoned or deserted is still on such terms of delicate good feeling with her spouse that her testimony must not be enforced lest the iridescent halo of peace be dispelled by the breath of disparaging testimony.

8 Wigmore, Evidence § 2239 at 243 (McNaughton rev.1961).

At least two Minnesota cases have observed that the actual relationship between spouses, rather than any ideal concept, should influence the application of the privilege; that is, the degree to which the privilege can or should be asserted should depend in part upon the integrity of the union purporting to justify its application.

*See Gianakos,* 644 N.W.2d at 417 (acknowledging that "[the supreme] court has at least implicitly recognized the legitimacy of the marriage as a factor" when determining applicability of marital privilege); *State v. Leecy,* 294 N.W.2d 280, 283 (Minn. 1980) ("[T]here is modern authority that a marriage well on its way to final dissolution will not support a claim of the privilege."). This is consistent with legislative amendments to the marital testimonial privilege, which preclude asserting the privilege to bar testimony about hostile or invidious conduct by one spouse against the other. *See* Minn.Stat. § 595.02, subd. 1(a) (2008) (amended 1969, 1987) (providing that marital testimonial privilege is inapplicable in "a criminal action or proceeding for a crime committed by one [spouse] ... against a child of either or against a child under the care of either spouse, ... [or] an action or proceeding for nonsupport, neglect, dependency, or termination of parental rights").

In addition to these considerations, four other reasons persuade us that the state's interpretation—focusing on the specific conduct underlying the offense—more accurately reflects the legislative intent of the exception for a "crime committed by one [spouse] against the other." These reasons are: (1) the lack of substance in Zais's distinction between disorderly conduct as a "public offense" and a "private offense"; (2) the lack of a "personal injury" requirement in the exception; (3) the interpretation of similar phrases in Minnesota statutes; and (4) the interpretation of similar statutes in other jurisdictions. We address, in turn, each of these reasons.

■ First, Zais's categorization of disorderly conduct as a "public offense" rather than a "personal offense" does not readily coincide with the language of the marital testimonial privilege and its exceptions or with caselaw considering the crime of disorderly conduct. "Conduct is 'disorderly' in the ordinary sense when it is of such nature as to affect the peace and quiet of persons who may witness it and who may be disturbed or provoked to resentment...." *State v. Reynolds,* 243 Minn. 196, 200, 66 N.W.2d 886, 889 (1954) (citation omitted). But the disorderly conduct statute criminalizes the prohibited conduct in either a "public or private place." Minn.Stat. § 609.72, subd. 1. And Minnesota caselaw has established that a disorderly conduct charge can be brought when there is only one witness or one intended victim of the behavior. *See City of St. Paul v. Azzone,* 287 Minn. 136, 140, 177 N.W.2d 559, 562 (1970) (upholding disorderly conduct charge when group of defendants chanted obscenities at officer in police station with no members of public present); *Reynolds,* 243 Minn. at 202, 66 N.W.2d at 891 (depending on facts and circumstances, disorderly conduct may occur when peace of only one person or member of public is disturbed). In the unpublished opinion *Craig v. State,* No. A07-1949, 2008 WL 5136170, *5–6 (Minn. App. Dec. 9, 2008), we held that "others" in the disorderly conduct statute does not require the presence of more than one other person. Although we do not accord precedential effect to unpublished opinions, the reasoning is persuasive. *See City of Saint Paul v. Eldredge,* 788 N.W.2d 522, 526–27 (Minn.App.2010) (recognizing that unpublished opinions may have persuasive value). The caselaw establishes that disorderly conduct is an offense that can be aimed at an individual rather than the public generally.

This extension of disorderly conduct to include a "personal offense" is also reflected in the holding that "self-defense is applicable to a charge of disorderly conduct [when] the behavior forming the basis of the offense presents the threat of bodily

harm." *State v. Soukup,* 656 N.W.2d 424, 429 (Minn.App.2003). This holding recognizes that disorderly conduct is not limited to general disturbances but can target individuals.

Second, neither "personal injury" nor "personal offense" is a term that is used in the marital-privilege statute. *See* Minn. Stat. § 595.02, subd. 1(a) (omitting any reference to personal injury or offense). At common law "personal injury" was required to invoke the privilege's exception. *Frey,* 76 Minn. at 528, 79 N.W. at 518–19. Even at common law, however, the meaning of the exception was unclear and courts applied varied interpretations of what constituted a personal injury against a spouse. *See* 8 Wigmore, Evidence § 2239 at 242 (McNaughton rev.1961) (indicating that bodily injury always invoked the exception but the exception did not extend "to all wrongs done to the wife").

Some caselaw relies on the common-law origins of the marital-privilege rule to suggest that its provisions should be retained in the codification. *E.g., Frey,* 76 Minn. at 528, 79 N.W. at 519. But the legislature, in enacting section 595.02, chose the broader language of "crime committed by one against the other" rather than the narrower common-law concept of "personal injury." *Cf. State v. Armstrong,* 4 Minn. 335, 342, 4 Gil. 251, 259 (1860) (quotation omitted) (holding that exception did not apply to prosecution of husband for adultery).

*Armstrong,* one of the earliest cases interpreting the statute, uses broad language in recognizing that a wife's testimony is admissible against her husband when she has experienced "personal violence," "ill treatment," or a "personal outrage." *Id.* at 341, 4 Gil. at 258 (citing *The People v. Chegaray,* 18 Wend. 642; 3 *Phil. Ev. with notes by Cow. and Hill,* p. 76). In *Huot,* decided in 1880, the court identified the marital-privilege statute's ambiguity.

If this statute merely laid down the rule disabling the husband and wife from testifying for or against each other, it might be urged that it was only a statutory adoption of the common-law rule, and that it adopted also the common-law application of the rule, including the exceptions. But it also prescribes the application of, and defines and limits the exception to, the rule of disability. This excludes resort to the common law to determine how far the rule shall prevail, and what cases shall be excepted from it. So it is immaterial that the common law did or did not. . . .

*Huot v. Wise,* 27 Minn. 68, 69–70, 6 N.W. 425, 426 (1880). Accordingly, a personal injury is not required to trigger the exception to marital privilege for proceedings in which a crime is committed by one spouse against the other.

Third, although no Minnesota case has interpreted the phrase "crime committed by one against the other," the supreme court has repeatedly held that the similar phrase, "crime against a person," applies to crimes whose elements and classifications do not specifically include "personal injury," based on the substance of the crime and the underlying conduct. *See State v. Myers,* 627 N.W.2d 58, 62–63 (Minn.2001) (holding obstruction of legal process is crime against person if underlying conduct creates special danger to human life); *State v. Notch,* 446 N.W.2d 383, 385 (Minn.1989) (holding burglary is crime against person if, "as committed," it is against person).

Similarly, we have held that the definition of "domestic abuse" focuses on the defendant's conduct rather than on a list of offenses. *State v. Barnslater,* 786 N.W.2d 646, 651 (Minn.App.2010), *review denied* (Minn. Oct. 27, 2010). *Barnslater* concluded that Minn.Stat. § 634.20's applicability is governed by "whether the accused's *un-*

*derlying conduct* constitutes domestic abuse," not by whether the charged offense falls within the statutory definition of a "domestic abuse" crime. *Id.* Accordingly, the admissibility of prior acts of "domestic abuse" is determined by the underlying conduct, not by the category of the charged offense. *Id.*

Fourth, other jurisdictions with similar statutes have interpreted "committed by one against the other" to include property offenses with no risk of physical harm. *See State v. Thornton,* 119 Wash.2d 578, 835 P.2d 216, 217–18 (1992) (holding that entering spouse's house, breaking window, slashing waterbed, and stealing suitcase is crime committed against spouse even when spouse not at home); *Hudson v. Com.,* 223 Va. 596, 292 S.E.2d 317, 318–19 (1982) (holding that "offense committed by one [spouse] against the other" includes crimes against person and property); *Peters v. Dist. Court of Iowa Linn Co.,* 183 N.W.2d 209, 210, 212 (Iowa 1971) (holding that husband's arson of marital home is crime committed against wife); *Dill v. People,* 19 Colo. 469, 36 P. 229, 233 (1894) (holding that perjury intended to deprive victim spouse of financial rights and interests is crime committed against spouse). A statute excepting a "personal wrong or injury" rather than a "crime" has also been interpreted to include property crimes. *See People v. Butler,* 430 Mich. 434, 424 N.W.2d 264, 266 (1988) (holding that arson of person's dwelling is personal wrong or injury to that person). Similarly, in an unpublished opinion from this court, we held that the marital testimonial privilege did not apply to arson charges for burning the jointly owned home because the act of burning the house was a crime committed by one spouse against the other even though the testifying spouse was not at home. *State v. Hawkins,* No. C3–97–857, 1997 WL 834952, at *2 (Minn.App. Feb. 10, 1997).

Finally, we note that construing the marital-privilege exception to take into account the specific conduct alleged is consistent with developments in other states that have addressed this question of statutory interpretation. Other jurisdictions have relied on a case-by-case analysis that considers the charged offense, the nature of the conduct underlying the charged offense, and surrounding circumstances, including the status of the marital relationship and the willingness of the witness-spouse to testify. *See, e.g., United States v. Smith,* 533 F.2d 1077, 1079 (8th Cir. 1976) (holding that crime was committed against spouse when defendant spouse hid heroin on spouse for smuggling); *Kirby v. Commonwealth,* 264 Va. 440, 570 S.E.2d 832, 835 (2002) (holding that crime was committed against spouse when defendant spouse shot two rounds of ammunition into bedroom floor while wife was in adjoining room, fifteen feet away); *State v. Thornton,* 119 Wash.2d 578, 835 P.2d 216, 218 (1992) (determining that burglary of spouse's home was crime against spouse even though spouse was not in home at time); *State v. Kilponen,* 47 Wash.App. 912, 737 P.2d 1024, 1027 (1987) (holding that burglary of spouse's home with intent to commit violent crime was crime committed against spouse); *State v. Whitaker,* 112 Ariz. 537, 544 P.2d 219, 224 (1975) (holding that firing shots into wife's apartment was crime committed against spouse even though shots did not hit her).

For all of these reasons we conclude that the exception to the marital testimonial privilege provided in Minn.Stat. § 595.02, subd. 1(a), which permits spouses to testify in a criminal proceeding for a crime "committed by one against the other," applies to a prosecution for disorderly conduct if the underlying conduct was directed at and adversely affected or endangered the testifying spouse.

The summary of Debra Zais's proposed testimony that was submitted in the state's offer of proof and the stipulated police reports establishes that Zais's alleged disorderly conduct was directed at and adversely affected or endangered Debra Zais. According to the offer of proof, Debra Zais would testify that she did not want Zais in the home and was fearful for her safety and her daughter's safety on the day of the incident, that Zais had left the home the day before because of an altercation with their daughter in which the police were called, that she had contacted a domestic-abuse advocacy program for help, and that Zais called her at the home threatening to break into the house or do whatever he had to do to get inside. Whether this conduct will ultimately be determined to constitute disorderly conduct is not at issue in this pretrial appeal. Our determination is confined to whether this action is a criminal action or a proceeding "for a crime committed by one [spouse] against the other" for purposes of the marital testimonial privilege. We conclude that, on these facts, the alleged disorderly conduct is a crime committed by one spouse against the other. Because the exception to the marital privilege applies, Zais may not invoke the marital testimonial privilege to prevent his wife from testifying against him in the prosecution of the disorderly conduct charge. We therefore reverse and remand to the district court.

## II

Zais argues in his responsive brief that the appeal should be dismissed because of prosecutorial impropriety in the state's decision to appeal the district court's ruling. Zais argues that the prosecutor improperly delegated to the Maple Grove Police Department the decision to appeal and that the City of Maple Grove's payment of a fee for the prosecution of the appeal creates an impermissible conflict of interest for the prosecutor, resulting in structural error. The claims are broadly drawn—both factually and legally—and we conclude that neither allegation provides a basis for dismissal of the appeal.

We start from the fundamental principle that the Minnesota Constitution divides the powers of government into three distinct departments—two of which are the executive and the judicial. Minn. Const. art. III, § 1. The prosecution power, including the decision of what cases to prosecute, resides in the executive department. *Johnson v. State*, 641 N.W.2d 912, 917 (Minn.2002); *State v. Foss*, 556 N.W.2d 540, 540 (Minn.1996). Courts are constitutionally obligated to defer to prosecutorial decisions of the executive branch and may not probe the reasons for the exercise of discretion without some coherent or specific allegation of a clear violation of law. *See State v. Johnson*, 514 N.W.2d 551, 556 (Minn.1994) ("[T]he prosecutor's decision whom to prosecute and what charge to file is a discretionary matter which is not subject to judicial review absent ... deliberate discrimination...." (quoting *State v. Herme*, 298 N.W.2d 454, 455 (Minn.1980))).

Zais's allegations are insufficiently specific or legally coherent to describe a violation of the prosecutorial power. The claim of improper delegation of the prosecutor's decision to appeal is based on the prosecutor's comment to Zais's attorney and the district court judge that he was contacting a police department sergeant for "authorization" because the police department would be "footing the bill for the appeal." The record does not clarify whether the prosecutor was referring to the bill for his legal services or for the "[r]easonable attorney fees and costs" that the governmental unit responsible for a pretrial criminal appeal must pay to the defendant. *See*

Minn. R.Crim. P. 28.04, subd. 2(6) (allowing defendant fees and costs in prosecutorial appeal of pretrial order).

In either case, the prosecutor explained on the record in the district court that, although the sergeant was consulted, his opinion was not conclusive and that the prosecutor and his law partner would make the decision on whether to appeal. He further stated that the reference to the sergeant's authorization was only to explain the "channels in [the] formal discussion." No evidence in the record describes the fee arrangement between the City of Maple Grove and the prosecutor or how the prosecutor is paid for trials or appeals.

■ Zais's claim that the prosecutor has an impermissible conflict of interest because he is receiving fees for representing Maple Grove in the appeal also lacks the necessary specificity and legal coherence to support a challenge to the exercise of prosecutorial discretion. This claim relies on the same exchange between Zais's attorney and the prosecutor about Maple Grove "footing the bill." Again, no evidence is provided anywhere in the record that shows how Maple Grove pays the prosecutor for his representation.

Zais analogizes the circumstances in this prosecution to a case in which the United States Supreme Court determined that it was a violation of the Fourth and Fourteenth Amendments for a state to pay a non-salaried justice of the peace a fee for each search warrant that he authorized but no fee for warrants that he denied. *Connally v. Georgia,* 429 U.S. 245, 250, 97 S.Ct. 546, 548, 50 L.Ed.2d 444 (1977). The analogy fails because the issuance of the warrants in *Connally* was a judicial action by an officer of the court, not a discretionary prosecutorial function by the executive branch of government. *Id.*

Zais's claim that the appeal should be dismissed because of structural error in the prosecutor's decision to appeal this case is not supported by facts in the record or by applicable law. He has failed to demonstrate that the prosecutor unlawfully delegated to the Maple Grove Police Department the decision to appeal or that Maple Grove's payment of a fee for the prosecution of the appeal creates an impermissible conflict of interest.

## DECISION

Because the exception to the marital testimonial privilege provided in Minn. Stat. § 595.02, subd. 1(a), for "a criminal action or proceeding for a crime committed by one against the other" applies to a prosecution for disorderly conduct when a spouse, who is the complaining witness, is adversely affected by the conduct underlying the complaint and because the alleged crime in this case was directed at Debra Zais, the district court erred in excluding Debra Zais's testimony under the marital testimonial privilege. We conclude that there was no structural error in the prosecutor's discretionary decision to appeal the district court's pretrial order.

**Reversed and remanded.**