*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1578**

State of Minnesota,
Respondent,

vs.

Tommy William Mix,
Appellant.

**Filed October 17, 2016
Affirmed
Reilly, Judge
Concurring specially, Johnson, Judge**

Polk County District Court
File No. 60-CR-11-2966

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Greg Widseth, Polk County Attorney, Scott A. Buhler, Assistant County Attorney, Crookston, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rachel F. Bond, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Johnson, Presiding Judge; Halbrooks, Judge; and Reilly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**REILLY**, Judge

Appellant challenges his first-degree arson conviction on the grounds that (1) the conviction must be reversed because the evidence is insufficient to establish that he

intentionally caused the fire and (2) that he is entitled to a new trial because the district court erred by admitting appellant's wife's testimony over his spousal-privilege objection. Because we determine that sufficient evidence supports the conviction and the district court did not commit reversible error by permitting appellant's wife to testify at trial, we affirm.

## FACTS

Appellant Tommy William Mix lived in a two-story house in Crookston with his wife, K.M., and their daughter, S.M. Appellant's house suffered from a number of structural problems, including water intrusion from the roof and cracks in the foundation. Appellant contacted his friend, B.T., to prepare a bid for repairs to the roof. During a tour of the home, B.T. noticed that there were "major problems" with the roof, and appellant confided in B.T. that "[i]f there was some way that [he] could get out of living in the house and get rid of the house, he would probably be better off." Appellant had recently been laid off from employment and told B.T. that "between the house and losing a job and his car payments and everything, it was just really frustrating for him."

The night of the fire, appellant was at home with his wife and daughter. K.M. and S.M. went to bed at about 10:00 p.m. in their upstairs bedrooms, and appellant fell asleep on the main floor of the home. K.M. awoke in the middle of the night to a strong gas smell in the house. K.M. went downstairs and saw appellant standing on the staircase landing. He told her to go back upstairs to bed, which she did. A short time later, appellant began screaming from the kitchen that there was a fire. K.M. smelled a strong odor of gasoline and ran downstairs to find appellant standing by the stove in the kitchen. K.M. ran upstairs to awaken her daughter and get her out of the house.

2

Firefighters responded to the emergency call and extinguished the fire. Firefighters saw a five-gallon gas can in the kitchen as well as "a couple pots or pans . . . with some liquid inside of them" in the oven. The firefighters also smelled a "fairly strong odor of gasoline" coming from the pans in the oven. Because it was "fairly out of the ordinary to find gasoline in a home," the fire chief immediately contacted the state fire marshal's office to assist in investigating the fire. Deputy State Fire Marshal Kevin Mahle conducted an "origin-and-cause" investigation into the fire to determine where the fire originated and its most likely cause. Based upon the fire patterns and movement patterns from the fire, Mahle concluded that the fire started near the top or right-hand side of the stove in the kitchen. Mahle observed a gas can near the stove and two pans inside the oven with "residual liquid in both of those pans that smelled and appeared to be similar to . . . gasoline." Mahle sent samples from the pans to the Minnesota Bureau of Criminal Apprehension (BCA) crime lab to be tested for ignitable liquids. The BCA confirmed that the liquid was gasoline. Mahle also found irregular burn patterns along the floor "extending from the area of the stove through the center of the kitchen," indicating that an ignitable liquid had been added to the fire. Based upon his experience, Mahle concluded that the fire was intentionally set with the use of gasoline. An investigation revealed that there was no sign of forced entry into the home and there was no evidence that anyone other than appellant, K.M., and S.M. were in the home when the fire started.

At the time of the fire, a property and casualty insurance company insured the home. Appellant made a claim to the insurance company for losses incurred as a result of the fire. The insurance company denied the claim. Insurance investigator Zack Spykerman

3

independently investigated the fire and determined that the point of origin of the fire was to the right of the stove in the kitchen, that there were two frying pans in the oven with liquid residue that was later determined to be gasoline, and that the only three people present in the house when the fire started were appellant and his wife and daughter.

The state charged appellant with first-degree arson. Following a four-day jury trial, the jury found appellant guilty of the charged offense. Appellant appealed his conviction.

## D E C I S I O N

## I.

Appellant argues that the evidence is insufficient to support his arson conviction because the state failed to prove beyond a reasonable doubt that appellant caused the fire. Our review of a sufficiency-of-the-evidence challenge is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in a light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." *State v. DeRosier*, 695 N.W.2d 97, 108 (Minn. 2005) (quotation omitted). Where a conviction or an element of the criminal offense has been proven by circumstantial evidence, as it was here, we apply a heightened standard of review. *State v. Al-Naseer*, 788 N.W.2d 469, 473 (Minn. 2010); *see also State v. Jacobson*, 326 N.W.2d 663, 665 (Minn. 1982) (recognizing that arson convictions often rest upon circumstantial evidence because there are typically no witnesses at the scene when the fire is discovered). Heightened scrutiny is a two-step process requiring the reviewing court to first "identify the circumstances proved" and defer to the jury's "acceptance of the proof of these circumstances," and then "examine independently the reasonableness of all inferences that

might be drawn from the circumstances proved, including inferences consistent with a hypothesis other than guilt." *State v. Porte*, 832 N.W.2d 303, 310 (Minn. App. 2013) (quotations omitted); *Al-Naseer*, 788 N.W.2d at 473-74, 477 (quotation omitted).

A person is guilty of first-degree arson when he "unlawfully by means of fire or explosives, intentionally destroys or damages any building that is used as a dwelling at the time the act is committed." Minn. Stat. § 609.561, subd. 1 (2010). Here, the evidence establishes the following circumstances: appellant, his wife, and their daughter used the home as their dwelling; appellant was recently laid off from his employment; the house suffered from structural problems and appellant stated he might be better off if he got rid of the house; there was no sign of forced entry into the home on the night of the fire or any evidence that non-family members were present in the home; appellant's wife woke up twice during the night and, both times, found appellant in the lower level of the home where the fire originated; appellant's gas can was found next to the stove; burn patterns on the kitchen floor indicated the fire was intentionally set using an ignitable fluid; two experts independently found a gas can next to the stove and two pans containing a liquid that smelled like gasoline in the oven; and the crime lab confirmed that the liquid in the oven was gasoline.

Appellant argues that the circumstances showing motive are weak. Whether the defendant had the motive, means, and opportunity to commit arson is important in determining guilt in a sufficiency-of-the-evidence challenge. *State v. Conklin*, 406 N.W.2d 84, 87 (Minn. App. 1987). While the state has "no burden of establishing a motive" for a criminal offense, "if the state can establish a credible motive, credibility is lent to the state's

contention that the accused committed the crime." *State v. Berndt*, 392 N.W.2d 876, 879 (Minn. 1986). The state presented evidence that appellant was having financial difficulties. Appellant filed for personal bankruptcy approximately one year before the fire and was laid off from his employment two months before the fire. Appellant and B.T. both testified that the house had ongoing structural problems, and B.T. testified that appellant wanted to "get rid of the house." This testimony establishes that appellant had a motive to set the fire. The evidence shows that the fire was started using gas from appellant's gas cans, establishing his means to set the fire. The state also presented evidence that appellant had the opportunity to set the fire. There was no sign of a forced entry into the home and the only people in the home at the time the fire started were appellant, his wife, and his daughter. Taken together, the testimony presented by the state establishes appellant's motive, means, and opportunity to set the fire.

The second step in our analysis is to determine whether the circumstances proved are consistent with guilt and inconsistent with any hypothesis other than guilt. *Al-Naseer*, 788 N.W.2d at 473-74. At this step, we do not defer to the jury's "choice between reasonable inferences." *Id*. at 474 (quotations omitted). Appellant argues the state's circumstantial evidence is "weak," but does not offer an alternative explanation for the fire. Instead, appellant argues that while the state's evidence "might be consistent with a rational inference of guilt," the circumstances proved are insufficient to "exclude hypotheses of innocence." Appellant's argument is not compelling. The circumstances proved are consistent with appellant's guilt and "inconsistent with any rational hypothesis except that

of guilt." *Al–Naseer*, 788 N.W.2d at 474-75 (quotations omitted). We therefore conclude that the evidence is sufficient to support appellant's first-degree arson conviction.

## II.

Appellant argues that the district court committed reversible error by permitting his wife to testify at trial despite his objection based on spousal privilege. Minnesota's spousal privilege statute provides that

> [a] husband cannot be examined for or against his wife without her consent, nor a wife for or against her husband without his consent, nor can either, during the marriage or afterwards, without the consent of the other, be examined as to any communication made by one to the other during the marriage.

*State v. Griffin*, 834 N.W.2d 688, 692 n.6 (Minn. 2013) (quoting Minn. Stat. § 595.02, subd. 1(a) (2012)). The statute contains several exceptions to spousal privilege, including the crime exception. Minn. Stat. § 595.02, subd. 1(a) (2012). The crime exception provides that spousal privilege "does not apply to . . . a criminal action or proceeding for a crime committed by one [spouse] against the other or against a child of either[.]" *Id*. "We review evidentiary rulings by a district court regarding the availability of a privilege established by statutory or common law for an abuse of discretion." *State v. Zais*, 805 N.W.2d 32, 36 (Minn. 2011) (citing *State v. Gianakos*, 644 N.W.2d 409, 415 (Minn. 2002)). "But the initial determination of whether a particular testimonial privilege or exception exists as a matter of law is a question that we review de novo." *Id*. "Generally, the marital privilege is construed narrowly and the exceptions are construed broadly." *Id*. at 38.

Before trial, the state indicated that it would introduce K.M.'s testimony regarding her observations on the night of the fire and her conversations with her husband. Appellant,

7

who was married to K.M. at the time of trial, objected to his wife testifying based on spousal privilege. The district court overruled appellant, stating that "there did not seem to be much in terms of what I would call . . . the normally confidential . . . communication between spouse[s] – if she's going to testify about her activities and what she observed defendant doing that night[.]" Following the first day of trial, the district court made additional factual findings with respect to appellant's assertion of spousal privilege:

> [T]he allegation is that it was a fire that began at 4:00 a.m. in the morning; that [K.M.] was home. She was awakened by activity, noticed the smell of gasoline. She sees [appellant], ends up going back upstairs; that she hears him swear. She goes downstairs towards the kitchen where she sees flames; that she goes back upstairs to get [their daughter] to awaken her so they both can get out of the house as the fire is going.
>
> . . . .
>
> I am going to find, at least in terms of solely the issue of marital privilege, that those facts support that this arson, as it was committed, did pose a special danger to human life, that being the life of [K.M.].

The district court's decision to permit K.M. to testify over appellant's objection was informed by the Minnesota Supreme Court case of *Zais*, 805 N.W.2d at 32. In that case, our supreme court considered whether the spousal privilege applied in a disorderly conduct case where defendant-husband "was trying to break down the garage door" and "knocked out some panels in the garage door with a hook" while his wife was inside the house. 805 N.W.2d at 35. Before trial, the state notified the defense that defendant's wife was a proposed witness in the trial proceedings. *Id.* The defense moved to exclude her testimony based on spousal privilege and the district court agreed, ruling that disorderly conduct

"does not create a personal injury sufficient to destroy the spousal privilege." *Id*. The state appealed, and this court reversed and remanded, concluding that the state had established that the crime exception to spousal privilege applied to a disorderly conduct offense if the underlying conduct "was directed at and adversely affected or endangered" the other spouse. *Id*. (citing *State v. Zais*, 790 N.W.2d 853, 857-64 (Minn. App. 2010). The supreme court granted review on the issue of whether the crime exception to spousal privilege applies to a disorderly conduct offense. *Id*. The defense argued that the charged offense of disorderly conduct could not be considered a crime committed by one spouse against the other because it is a "public offense committed against the public at large and not a specific individual." *Id*. at 39. Defendant argued that the crime exception "only applies to crimes directed at a person, such as assault or domestic violence." *Id*.

The Minnesota Supreme Court rejected this argument, holding that "[t]he disorderly conduct statute does not exclude conduct that is directed against one person. Consequently, we conclude that the crime exception may be applicable to the charged offense of disorderly conduct in this case." *Id*. at 40. The *Zais* court then "considered whether the State's proposed evidence regarding the elements of the disorderly conduct charge, together with the [defendant's] actual conduct, establish[ed] that the crime was committed by one spouse against the other." *Id*. at 40-41. The supreme court found that the state's proposed evidence established that defendant "committed the offense of disorderly conduct against his wife," and therefore concluded that the crime exception to spousal privilege applied. *Id*. at 41.

9

*Zais* contemplates that "the crime exception to the marital privilege statute in section 595.02, subdivision 1(a) . . . requires that the [reviewing] court examine not only the elements of the crime, but also the underlying conduct of the defendant to determine whether the crime was 'committed' by one spouse against the other." 805 N.W.2d at 38. With respect to the first prong of this test, the elements of arson include that a person "intentionally destroys or damages any building that is used as a dwelling at the time the act is committed." Minn. Stat. § 609.561, subd. 1. Arson is classified as a property crime. Minn. Stat. § 609.561, subd. 1; *State v. Myers*, 416 N.W.2d 736, 737 (Minn. 1987) (defining arson as a "property offense committed by physical means"). A person may be guilty of first-degree arson of a dwelling "whether the inhabitant is present therein at the time of the act or not." Minn. Stat. § 609.561, subd. 1. However, Minnesota law also recognizes first-degree arson as a "crime of violence." Minn. Stat. § 624.712, subd. 5 (2014) ("'Crime of violence' means: felony convictions of the following offenses . . . 609.561 (arson in the first degree)."). A "crime of violence," in turn, is further defined as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another," or "any other offense that is a felony and that, by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Campos v. State*, 816 N.W.2d 480, 484 n.3 (Minn. 2012) (citing 18 U.S.C. § 16 (2006)).

Minnesota appellate courts have repeatedly held that "crime against a person" applies to crimes "whose elements and classifications do not specifically include 'personal injury,' based on the substance of the crime and the underlying conduct." *Zais*, 790 N.W.2d

10

at 862, *aff'd*, 805 N.W.2d 32 (citing *State v. Myers*, 627 N.W.2d 58, 62-63 (Minn. 2001) (holding that obstruction of legal process is a crime against a person if the underlying conduct creates a special danger to human life); *State v. Notch*, 446 N.W.2d 383, 385 (Minn. 1989) (noting that burglary is also a crime against a person if, "as committed," it is against a person)). Thus, a property crime may be characterized as a crime against a person where it carries some special risk to human life. *See State v. Nunn*, 297 N.W.2d 752, 754 (Minn. 1980) (holding that burglary of a dwelling "should not be deemed a purely property offense because . . . such an offense always carries with it the possibility of violence and therefore some special risks to human life"); *see also State v. Amundson*, 828 N.W.2d 747, 752-53 (Minn. App. 2013) (holding that in determining whether a crime is a "crime against a person" for purposes of permissive consecutive sentencing, the court looks to whether the conduct "poses a special danger to human life"). The elements of the crime here support a decision that, while first-degree arson is a property crime, it also carries "special risks to human life," *Nunn*, 297 N.W.2d at 754, and is a crime of violence.

Next, we consider "all relevant underlying facts" to determine whether the state's evidence, combined with appellant's actual conduct, establish that his crime was "committed by one spouse against the other." *Zais*, 805 N.W.2d at 38-39. The state's evidence establishes that appellant's wife and daughter were present in the home when the fire started. K.M. awoke during the middle of the night because she thought she smelled a strong scent of gasoline in the house. K.M. went downstairs and encountered appellant on the staircase landing. Appellant told her to go back upstairs. Later, K.M. was again alerted when she heard appellant scream that there was a fire in the kitchen. K.M. went downstairs

11

and found appellant in front of the stove, where she smelled gasoline and saw flames. Appellant's daughter was asleep in her upstairs bedroom throughout this exchange. Based upon this evidence, the state has established that appellant committed a first-degree arson offense against his spouse. Appellant set fire to his home, knowing that his wife and daughter were sleeping upstairs. Appellant's conduct posed a special danger to human life, namely, that of his wife and daughter. *Nunn*, 297 N.W.2d at 754. We therefore conclude that the district court did not err when it determined, given this factual situation, that the crime exception to spousal privilege applies where appellant intentionally sets fire to a home in which his wife and daughter are present, creating a special danger to their lives and making them crime victims.

**Affirmed.**

**JOHNSON**, Judge (concurring specially)

I respectfully disagree with part II of the opinion of the court insofar as it reasons that the district court did not err by overruling Mix's objection to the trial testimony of his wife, K.M. I would reason that the district court erred in its ruling because the crime-against-the-spouse exception to the marital privilege does not apply in this case. But I also would reason that the district court's error is harmless. Therefore, I concur in part I and concur in the judgment.

**A.**

Mix argues in part II of his brief that the crime-against-the-spouse exception to the marital privilege does not apply and, consequently, that the district court erred by permitting his wife to testify at trial. The crime-against-the-spouse exception applies in a prosecution "for a crime committed by one [spouse] against the other [spouse]." Minn. Stat. § 595.02, subd. 1(a) (2014). Because the issue is a matter of statutory interpretation, we apply a *de novo* standard of review to the district court's application of the statute, based on the record that existed at the time of the district court's ruling. *State v. Zais*, 805 N.W.2d 32, 36 (Minn. 2011).

In *Zais*, the supreme court instructed lower courts to consider "the elements of the crime charged" and "the underlying conduct supporting the crime." *Id.* at 39. I would agree with the premise that, based on the elements of the offense, a spouse of a defendant charged with arson is a victim of the crime if the spouse had an ownership interest in the dwelling that was destroyed or damaged. *See Peters v. District Court*, 183 N.W.2d 209, 210-12 (Iowa 1971) (holding that wife may testify against husband charged with setting

fire to home jointly owned by them). But a spouse is not necessarily a victim of arson if the spouse does not have an ownership interest in the dwelling that was destroyed or damaged. *See Creech v. Commonwealth*, 410 S.E.2d 650, 651-52 (Va. 1991) (holding that crime-against-spouse exception to spousal privilege does not apply to prosecution of man charged with setting fire to home owned solely by him). In this case, Mix was the sole owner of the family's dwelling; his wife had no ownership interest in the property at the time of the fire.

The district court reasoned that Mix was accused of committing a crime against his wife on the ground that "this arson, as it was committed, did pose a special danger to human life," *i.e.*, his wife's life. This court affirms the district court's ruling for the same reason. In my view, the particular manner in which Mix was accused of committing arson, based on the record before the district court at the time of its ruling, did not put his wife in special danger. Both Mix and his wife were inside the home, were exposed to the same risks, and exited the home together. K.M. was not sleeping when the fire was started; she had been awake, had talked to Mix moments earlier, and had just gone back upstairs but had not yet gone back to bed. Mix alerted his wife to the fire promptly and loudly to ensure that she was able to escape. She did, in fact, escape and was not injured. Mix's actions were not completely free of risk, but there does not appear to have been a "special danger" that any member of the family would perish or would be injured. The facts of this case are very different from arson cases in which death or injury is likely because a defendant intentionally and surreptitiously sets fire to a dwelling while another person is inside and does not provide assistance to the person inside the dwelling. *See, e.g.*, *State v. Daniels*,

CS-2

380 N.W.2d 777 (Minn. 1986); *State v. Martinson*, 422 N.W.2d 282 (Minn. App. 1988). In this case, the intended victim of Mix's crime was not his wife but, rather, the insurance company that had issued him a homeowner's policy.

In addition, other circumstances indicate that Mix did not commit arson against his wife. K.M. did not ask prosecutors to file charges against her husband; rather, the local fire department asked the police department to initiate a criminal investigation. In her pre-trial statements to investigators, she did not state that her husband had started the fire; rather, she said that he did not do it. Nothing in the record indicates that there were any problems in the marital relationship. In fact, the prosecutor previously asked the district court for permission to examine K.M. as a hostile witness, *see* Minn. R. Evid. 611(c), stating that K.M. "clearly . . . identified with an adverse party," that she did not want to testify but had been served with a subpoena, that she was "still married to Mr. Mix," and that there was "no animosity between them." The prosecutor's statement makes clear that this is not a case in which a defendant coerced or threatened a victim into refraining from assisting investigators or prosecutors. For this reason, the district court's ruling is especially repugnant to the long-standing purpose of the marital privilege: to not "cause strife between the parties to a marriage contract," to not undermine families and thus "weaken the entire social structure," to not impose "antagonistic interests . . . upon the intimate relations of husband and wife," and to avoid "the harm to the public which results from marital discord." *State v. Gianakos*, 644 N.W.2d 409, 416 (Minn. 2002) (quoting *State v. Feste*, 205 Minn. 73, 74-75, 285 N.W. 85, 86 (1939)). These circumstances set this case apart from *Zais*, a case in which the defendant had quarreled with his wife one

day earlier and obviously directed his criminal conduct toward his wife, who reported it to law enforcement and apparently cooperated with the prosecution. *See* 805 N.W.2d at 35.

Thus, I would conclude that Mix was not accused of committing a crime against his wife, that the crime-against-the-spouse exception to the marital privilege does not apply, and that the district court erred by overruling Mix's objection to his wife's testimony.

**B.**

The state argues in the alternative that any error by the district court would be a harmless error. *See* Minn. R. Crim. P. 31.01; *State v. Expose*, 872 N.W.2d 252, 260-61 (Minn. 2015) (applying harmless-error test to erroneous admission of testimony protected by privilege). The state's alternative argument has merit. As described in the opinion of the court, the state's evidence was strong. The state's forensic evidence showed that the fire was intentionally set, and Mix did not disagree when he testified on cross-examination. The evidence shows that only three persons were present in the home when the fire started: Mix, his wife, and his daughter. The state's evidence also shows that Mix was unemployed and was experiencing financial difficulties, including the prospect of expensive repairs to his home. Mix's testimony that he did not start the fire does not appear to be nearly as convincing as the state's evidence. In closing argument, Mix's attorney could do little more than emphasize the state's obligation to prove its case beyond a reasonable doubt. In addition, K.M.'s testimony was mostly repetitive of her pre-trial statements. The audio-recordings of those statements were played for the jury, and Mix does not contest the admissibility of those statements on appeal. Furthermore, the prosecutor's closing argument relied almost exclusively on the testimony of the state's other witnesses and on

K.M.'s pre-trial statements. Thus, I would conclude that the district court's erroneous admission of K.M.'s testimony did not "substantially influence[] the verdict." *See Expose*, 872 N.W.2d at 260.

For these reasons, I join in the court's decision to affirm Mix's conviction.