[No. 8369.   Department One.   January 8, 1910.]

THE STATE OF WASHINGTON, *Respondent*, v. SYLVESTER KEPHART, *Appellant*.[1]

WITNESSES—COMPETENCY—HUSBAND AND WIFE—CRIMES AGAINST OTHER SPOUSE—ARSON.   Under Bal. Code, § 5994, disqualifying a husband or wife from testifying against the other without the other's consent, except in certain cases and in criminal cases "for a crime committed by one against another," the wife is incompetent to testify against the husband without his consent in a prosecution for the crime of arson in the burning of a barn belonging to the wife; as the offense is not a crime committed against her.

SAME. Bal. Code, §§ 7094, 7098, defining arson, and providing that a married woman commits the crime if the property set fire to belongs to her husband, creates no exception to the rule of evidence that one spouse cannot testify against the other, without the other's consent, except in prosecutions for crime committed by one against the other.

Appeal from a judgment of the superior court for Douglas county, Steiner, J., entered February 8, 1909, upon a trial and conviction of arson.   Reversed.

*W. J. Canton* and *Reneau & Clapp*, for appellant.
*Sam B. Hill*, for respondent.

CHADWICK, J.—On the night of August 22, 1908, a barn belonging to Mildred Jane Kephart, was burned. Appellant, the husband of the complaining witness, was arrested on the next day, and was thereafter brought to trial.   The

[1]Reported in 106 Pac. 165.

36—56 WASH.

wife was sworn as a witness, and testified over the objection of appellant, the learned trial judge observing:

"Under the terms of our statute I hold the true rule to be that where the husband is on trial for an alleged offense which, if committed, was of such a nature that it did not affect the rights of the wife in the manner different from that of other members of the general body of society, then the wife is not a competent witness against the husband, without his consent. But in all cases where the offense charged is of such a nature that, if committed, it was a direct and specific invasion of the wife's personal property rights, then the wife is a competent witness against her husband."

A careful reading of the testimony confirms the observation of the prosecuting attorney that, without the testimony of the wife of the defendant, no conviction can be had. In the case of *State v. Kniffen*, 44 Wash. 485, 87 Pac. 837, 120 Am. St. 1009, a bigamy case, the statute, Bal. Code, § 5994, which disqualifies a wife as a witness against her husband, was under consideration. After noting the conflict of authority in the application of this statute, the court said:

"In *Bassett v. United States, supra* [137 U. S. 496], the supreme court of the United States considered the cases cited above from Minnesota, Texas, Iowa and Nebraska, and concluded that a statute similar to our own was but an affirmation of the common law rule, and polygamy was a crime against the marriage relation, and not one committed by one spouse against the other. While much may be said in favor of the position that bigamy, adultery, and kindred crimes are committed by one spouse against the other, yet the weight of authority seems to be opposed to that rule. 30 Am. & Eng. Ency. Law (2d ed.), p. 956. We therefore feel bound to hold that in this case the court erred in permitting the first wife to testify against her accused husband."

We have been treated to a scholarly discussion of this subject by the prosecuting attorney, who reviews the history of our statute and undertakes to make plain that the words "nor in a criminal action or proceeding for a crime

committed by one spouse against the other" were used advisedly, and with intent to change the rule of the common law and of the statutes in some of the other states wherein it is expressly provided that a husband or wife shall not testify for or against each other, "except with the consent of both or in case of criminal violence upon one by the other." This court, in company with most respectable authority, has decided that such statutes are declaratory of the common law. This being so, the wife could not testify in any case to which the husband was a party, unless the case falls within some statutory exception to the rule itself.

The point is made that Bal. Code, §§ 7094 and 7098, defining the crime of arson and providing that a married woman "who shall commit the crime may be punished therefor though the property set fire to may belong partially or wholly to her husband," creates an exception. It is said that the latter section makes it certain that it was the intention of the code makers to place the wife upon the same plane of criminal responsibility as her husband for every arson committed by her, and that the rational conclusion follows that, in order to make the statute effective, the husband must have the right to testify against the wife, § 7098 working, as it were, an implied exception to § 5994, and that the bar being raised in such cases as to the husband, it was of course raised as to the wife when the crime was committed under the same circumstances.

Courts are not warranted in changing rules of evidence to meet some theory of the law, however attractive it may be. The statute relied on was passed because it was held in the case of *Rex v. March*, 1 Moody 182, that a wife was not guilty of the crime of arson when the property destroyed belonged to her husband. This decision has no foundation in reason, but it has called for legislative expression in most of the states where the common law prevails. The decision did not, nor do we know of any statute enacted because of it which makes any exception to the rule of evidence which we

now have before us. Notwithstanding the engaging argument made by Mr. Wigmore, and some case writers to which we have been referred, that the application of the common law rule should be outlawed by reform, courts should not lightly throw away a rule which is the growth of a practical attempt to find the truth in favor of a theory based upon the independence of a husband and wife, the one of the other. If there is any reason for the rule except in the case of personal violence, it must exist in all cases; for the reason underlying it rests, not upon the character of the case, but upon the relation of the parties. As Mr. Greenleaf, a writer who, as contradistinguished from Mr. Wigmore, had met the law in action and is regarded as at least equally competent as an authority, has said, "the principle of the law requires its application in all cases in which the interest of the other party is involved." Exceptions can only be worked where, as was said by Lord Mansfield in *Bentley v. Cooke*, 3 Douglas 422, there is some necessity, "not a general necessity, as where no other witness can be had, but a particular necessity, as where, for instance, the wife would be otherwise exposed without remedy to personal injury."

Public policy, as at present defined, demands, on the one hand, that the sanctity and harmony of the marital relation be preserved; and on the other, it insists that one spouse shall not maintain a suit, or, unless within a recognized exception, be deprived of his liberty or his property, by the testimony of the other. Experience has taught us that in most cases where the testimony of the husband or wife is taken for or against the other, the truth is obscured and justice hoodwinked. There is nothing more dangerous to truth than testimony prompted by conjugal affection, unless it be the echoes of a shattered home where love has flown and hatred broods expectant for the fray. These are the reasons underlying the common law rule, a rule wisely fixed to meet the actual questions and conditions confronting

society as well as the courts. It may be, as counsel says, the rubbish of antiquated and superseded systems of jurisprudence, but the time has not yet come when we can with safety substitute for the opinions of the sages of the law the vision of the theorist, based upon the idea that husband and wife are above the restraints and influences of affection, hope, fear, jealousy, and hatred, emotions sustaining or too frequently growing out of the marriage relation. The rule may be imperfect, but it is made to fit the imperfections of man, and has been found to be practical. Though justice may be defeated in the few cases, it is subserved in the many. We have not discussed cases in this opinion. The rule we adhere to is sustained by an overwhelming weight of authority. They may be found in the encyclopaedias, digests, and text-books. The necessity of the rule is familiar to every practitioner, and there are few judges who will require any authority or argument to persuade them of the wisdom of the common law rule.

Reversed and remanded.

RUDKIN, C. J., FULLERTON, MORRIS, and GOSE, JJ., concur.