[No. 58273-4.   En Banc.   September 3, 1992.]

THE STATE OF WASHINGTON, *Appellant*, v. ROBERT PAUL THORNTON, *Respondent*.

*Norm Maleng, Prosecuting Attorney,* and *Scott Peterson, Deputy,* for appellant.

*Anna-Mari Sarkanen* of *Washington Appellate Defender Association,* for respondent.

*Ruth Laura Edlund* on behalf of Northwest Women's Law Center, amicus curiae for appellant.

*Catherine W. Smith* on behalf of Washington Association of Criminal Defense Lawyers, amicus curiae for respondent.

DURHAM, J. — We are asked to decide if a wife can testify against her husband (the defendant) in a prosecution for burglary of her home. At issue is the scope of the exception to the spousal incompetency rule which applies when one spouse commits a crime against the other.

Defendant, Robert Thornton, is married to Arlene Thornton. On July 11, 1990, a no-contact order was entered in Renton Municipal Court against defendant. The certificate of probable cause filed by the prosecuting attorney's office contains the following description of the relevant facts:

> On August 3, 1990 at approximately 11 a.m., while Ms. Thornton was at work, the defendant entered her home without permission, breaking a window to gain entry. Inside the residence, the defendant slashed his wife's waterbed with a butcher knife, and stole her suitcase.
> The defendant was observed inside Ms. Thornton's residence by a neighbor, who called the police. The defendant fled before the police arrived, but his automobile was seen in the area.

Clerk's Papers, at 6. Defendant was charged with residential burglary, RCW 9A.52.025, a class B felony.

Defendant moved to exclude his wife's testimony under RCW 5.60.060(1). The State conceded, and the trial court acknowledged, that Washington appellate cases which would not allow her testimony were binding upon the trial court. Accordingly, the trial court granted the motion and dis-

missed the charge without prejudice, and the State appeals under RAP 2.2(b)(1). We overrule previous cases which interpret RCW 5.60.060(1) in a manner inconsistent with this opinion, and we therefore reverse and remand for further proceedings.

RCW 5.60.060(1) provides:

> A husband shall not be examined for or against his wife, without the consent of the wife, nor a wife for or against her husband without the consent of the husband . . ..

The privilege is often referred to as the rule of spousal incompetency because it operates to entirely preclude a witness's testimony.[1] The statute contains several exceptions to the rule. One of these is that the privilege does not apply "to a criminal action or proceeding for a crime committed by one [spouse] against the other". RCW 5.60.060(1).

■ Under the plain language of the statute, defendant here cannot preclude his wife's testimony. The victim of the burglary was the defendant's spouse; thus, the spousal incompetency rule does not apply on its face. However, this exception has been interpreted in earlier cases of this court as applying only to crimes of *personal violence* by one spouse against the other. *State v. Thompson*, 88 Wn.2d 518, 522-23, 564 P.2d 315 (1977); *State v. Grasser*, 60 Wn.2d 343, 374 P.2d 149 (1962); *State v. Beltner*, 60 Wash. 397, 111 P. 344 (1910); *State v. Kephart*, 56 Wash. 561, 106 P. 165 (1910).

The leading case in this regard is *Kephart*, decided in 1910. There, the trial court allowed a wife to testify against her husband in a prosecution for arson involving a barn which belonged to her. *Kephart*, at 562. This court rejected the State's argument that the statute should be construed literally, and instead held that the privilege could be abrogated only in crimes involving personal violence against

---

[1] Two types of marital privileges are provided by statute under Washington law. Although they are both granted in the same statute, they are entirely distinct. 5A K. Tegland, Wash. Prac., *Evidence* § 164, at 11 (3d ed. 1989). RCW 5.60.060(1) provides in part: "nor can either during marriage or afterward, be without the consent of the other, examined as to any communication made by one to the other during marriage." This form of privilege pertains to marital communications, and does not apply here.

the spouse. The court declined to adhere to the plain language of the statute, holding that the statute was "declaratory of the common law." *Kephart*, at 563. The significance of spousal incompetency was explained as follows:

> Public policy, as at present defined, demands, on the one hand, that the sanctity and harmony of the marital relation be preserved; and on the other, it insists that one spouse shall not maintain a suit . . . by the testimony of the other. Experience has taught us that in most cases where the testimony of the husband or wife is taken for or against the other, the truth is obscured and justice hoodwinked. There is nothing more dangerous to truth than testimony prompted by conjugal affection, unless it be the echoes of a shattered home where love has flown and hatred broods expectant for the fray. These are the reasons underlying the common law rule . . ..

*Kephart*, at 564-65.

Recently, the United States Supreme Court pointed out that the spousal immunity rule has its origins in the English common law:

> This spousal disqualification sprang from two canons of medieval jurisprudence: first, the rule that an accused was not permitted to testify in his own behalf because of his interest in the proceeding; second, the concept that husband and wife were one, and that since the woman had no recognized separate legal existence, the husband was that one. From those two now long-abandoned doctrines, it followed that what was inadmissible from the lips of the defendant-husband was also inadmissible from his wife.

*Trammel v. United States*, 445 U.S. 40, 44, 63 L. Ed. 2d 186, 100 S. Ct. 906 (1980).[2]

We conclude that the policy reasons set out in *Kephart* are based on a view of the marriage relationship which is no longer accepted. It is hard to conceive of any credible justification for preventing an injured spouse from testifying in a criminal proceeding against the perpetrator. Certainly, the marital relationship has already been damaged, and if criminal activity is occurring, no legitimate purpose is served by

---

[2]In *Trammel*, 445 U.S. at 53, the Court held "that the existing rule should be modified so that the witness-spouse alone has a privilege to refuse to testify adversely". Thus, the federal common law rule of spousal incompetency was entirely abandoned. Here, we are asked only to decide the scope of a statutory exception to the rule, not to abrogate the rule itself.

refusing the victim of the crime the opportunity to testify against the person who committed it. The "sanctity of the marital relation" should not be preserved at the expense of one spouse's safety or peace of mind. As the Supreme Court stated in *Trammel*:

> The ancient foundations for so sweeping a privilege have long since disappeared. Nowhere in the common-law world — indeed in any modern society — is a woman regarded as chattel or demeaned by denial of a separate legal identity and the dignity associated with recognition as a whole human being. . . .
> The contemporary justification for affording an accused such a privilege is also unpersuasive. When one spouse is willing to testify against the other in a criminal proceeding — whatever the motivation — their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve. In these circumstances, a rule of evidence that permits an accused to prevent adverse spousal testimony seems far more likely to frustrate justice than to foster family peace.

*Trammel*, 445 U.S. at 52. Although the Court was concerned with the continued vitality of the spousal incompetency rule itself, its reasoning applies with equal force to the *Kephart* personal violence exception.

■ Since the personal violence rule is court imposed, it retains its common law character. *Cf. Kephart*, at 563; *see also* RCW 4.04.010. Indeed, this court expressly rejected the notion that it was construing the statutory privilege in *Kephart*, and instead relied solely on its interpretation of the common law in requiring that a crime of personal violence be involved.[3] Thus, as a judge-made rule, the personal violence exception is subject to modification by this court. *Wyman v. Wallace*, 94 Wn.2d 99, 101, 615 P.2d 452 (1980).

---

[3]The *Kephart* court noted that: "We have not discussed cases in this opinion. The rule we adhere to is sustained by an overwhelming weight of authority. They may be found in the encyclopaedias, digests, and text-books. The necessity of the rule is familiar to every practitioner, and there are few judges who will require any authority or argument to persuade them of the wisdom of the common law rule." *Kephart*, at 565.

Those were, indeed, simpler times.

■ Defendant points out that RCW 5.60.060(1) has been amended subsequent to this court's decision in *Kephart*. He argues that the Legislature is presumed to be aware of judicial construction, and that a failure to amend the portion of the statute in question here reflects legislative approval of the personal violence limitation. Although we have never adopted this view, it has been previously advanced. In *State v. Moxley*, 6 Wn. App. 153, 156, 491 P.2d 1326 (1971), *review denied*, 80 Wn.2d 1004 (1972), the Court of Appeals held that the requirement of personal violence continued to be the rule, and stated: "The fact that the legislature in amending the statute in 1965 did not change the long-followed *State v. Kephart* rule, *supra*, indicates legislative acquiescence in the *Kephart* rule." *Moxley*, at 157. The reasoning from *Moxley* was cited with approval in a dissent in *State v. Thompson*, 88 Wn.2d 518, 532, 564 P.2d 315 (1977) (Utter, J., dissenting):

> The rule forbidding testimony by one's spouse against the other, cited by the majority (RCW 5.60.060(1)), is a legislatively-created rule. The difficult policy choices were made by the legislature and it has not chosen to engraft an exception . . . upon our statute.

We disagree. As an embodiment of the common law, the personal violence exception is subject to revision by the court. We overrule *Kephart* and its progeny, and interpret the statute in accordance with its plain language. Under RCW 5.60.060(1), the rule of spousal incompetency cannot be used to bar testimony of the spouse against whom any crime was committed.

We reverse the trial court and remand for further proceedings.

DORE, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, SMITH, GUY, and JOHNSON, JJ., concur.