IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 30552-0-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DORELL NICKERSON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Dorell Nickerson appeals his conviction of felony violation of a domestic violence no-contact order restricting contact with his wife. He claims his lawyer was ineffective for failing to request a jury instruction explaining the limited purpose for which evidence of Mr. Nickerson's prior assault of his wife was admitted as evidence. Courts have long recognized that reasonable defense lawyers may elect to forgo such instructions to avoid emphasizing damaging evidence. Yet Mr. Nickerson offers no reason why his lawyer's action was not tactical.

Because he shows no conduct by his lawyer that falls below an objective standard of reasonableness and presents no other viable issue in his pro se statement of additional grounds, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Dorell Nickerson is married to Sonia Kellerman Nickerson. During their troubled relationship there has been a series of protective orders prohibiting him from having contact with her. As of October 2011, a no-contact order was in place.

On the evening of October 11, 2011, Eliseo Barreiro, one of Ms. Nickerson's neighbors, called 911 to report the sounds of screaming and fighting coming from Ms. Nickerson's apartment. Before police arrived, Mr. Barreiro saw a man leaving her apartment and Ms. Nickerson "all beat up in the door, in her door well." Report of Proceedings (RP) at 154. Although Mr. Barreiro did not know Mr. Nickerson, he was later able to identify him as the man who left the apartment.

When officers arrived, Ms. Nickerson had, among other injuries, a visible laceration on her forehead. She told officers that she had fallen, but later added that Mr. Nickerson had accused her of cheating on him and, when she answered that the man about whom her husband was concerned was a friend, "I got socked in my [forehead] and I now have a cut in [my forehead]." Ex. 17. Mr. Nickerson was located within a block of the apartment shortly after the arrival of the officers and was arrested for violation of the no-contact order.

The State charged Mr. Nickerson with one count of felony violation of a domestic violence no-contact order. It alleged alternative means, charging that he knowingly violated the restraint provisions in the no-contact order and "did intentionally assault

2

another in a manner that does not amount to an assault in the first or second degree and/or

engaged in conduct that was reckless and created a substantial risk of death or serious

physical injury" to Ms. Nickerson and, alternatively, violated the order while having "at

least two prior convictions for violating the provisions of an order issued under Chapters

7.90, 9.94A, 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34 RCW." Clerk's Papers at 3-4.

The former means (an assault in the course of violating an order) is a class C felony

under subsection (4) of RCW 26.50.110. The latter means (violation of an order

following conviction of two prior violations) is a class C felony under subsection (5) of

RCW 26.50.110.

At trial, the State offered certified copies of judgments and sentences showing that

Mr. Nickerson had three prior convictions for violating protection and no-contact orders,

an element of the offense under subsection (5). The court admitted the judgments and at

the close of evidence gave a limiting instruction, cautioning the jurors that

> [c]ertain evidence has been admitted in this case for only a limited purpose.
> This evidence consists of certified copies of judgment and sentences and
> may be considered by you only for the purpose of determining if defendant
> has been previously convicted of a violation of a no contact order. You
> may not consider the contents of the judgment and sentences for any other
> purpose. Any discussion of the evidence during your deliberations must be
> consistent with this limitation.

RP at 174.

The State also sought to offer evidence that Mr. Nickerson had a prior conviction

for domestic violence assault against Ms. Nickerson. Its reason for offering evidence of

3

this prior conviction was because Ms. Nickerson had refused to appear voluntarily as a witness for the State and it feared she would recant her allegation that Mr. Nickerson hit her. In that event, it argued, the prior assault would help the jury understand why she might be recanting. The court analyzed the admissibility of the evidence under ER 404(b) and ruled that it would be admitted in the event Ms. Nickerson did recant, explaining:

> [I]f Ms. Kellerman presents recantation testimony, the assault [domestic violence] . . . would also be admissible. It would be admissible to show her state of mind, it would be admissible so the jury can evaluate the relationship between the parties. Although it certainly is . . . prejudicial, it is also probative of why Ms. Kellerman may have told one story at one point and another story at another point. And that can come in if indeed that is how her testimony comes out in court.

RP at 28-29.

At trial, Ms. Nickerson did recant her original statement that Mr. Nickerson hit her. She denied that Mr. Nickerson was at her apartment on the evening of October 11 and claimed she sustained her injuries by falling and sliding into a cabinet door. She also denied that her relationship with Mr. Nickerson had ever become violent. In explanation of her original statement to police, she testified, "My daughter was there, she coaxed me into writing a statement 'cause I was on medications. The cops threatened me about taking to jail." RP at 60.

Following Ms. Nickerson's testimony, the State offered and the court admitted a certified copy of the judgment and sentence of Mr. Nickerson's prior conviction of

4

domestic violence assault against Ms. Nickerson. Mr. Nickerson's lawyer did not request a limiting instruction addressing this judgment and sentence. The court did not give one.

Mr. Nickerson was found guilty and appeals.

## ANALYSIS

Mr. Nickerson argues that he was prejudiced by the trial court's failure to instruct the jury to consider his prior conviction of domestic violence assault for only a limited purpose. Because his trial lawyer did not request a limiting instruction and the trial court is not required to give such an instruction sua sponte, *see State v. Russell*, 171 Wn.2d 118, 124, 249 P.3d 604 (2011), he argues that he was deprived of his Sixth Amendment right to effective assistance of counsel.

To demonstrate ineffective assistance of counsel, a defendant must show that his lawyer's representation was deficient and the deficient representation prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Representation is deficient if it falls "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). Prejudice occurs when but for "counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 335. If a party fails to satisfy either element, the reviewing court need not consider both prongs. *State v. Foster*, 140 Wn. App. 266, 273, 166 P.3d 726 (2007).

5

"Judicial scrutiny of counsel's performance must be highly deferential" and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 100 L. Ed. 83 (1955)). Tactical decisions cannot form the basis for a claim of ineffective assistance of counsel. *McFarland*, 127 Wn.2d at 336 (citing *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994)).

While evidence of prior misconduct is not admissible to show that a defendant had a propensity to engage in similar conduct, it is admissible for other purposes. In the case of "prior acts of domestic violence, involving the defendant and the crime victim" it is admissible for the purpose of "assist[ing] the jury in judging the credibility of a recanting victim." *State v. Magers*, 164 Wn.2d 174, 186, 189 P.3d 126 (2008). Where evidence is admissible for one purpose but not for another, a defendant is entitled to a limiting instruction upon request. *State v. Gresham*, 173 Wn.2d 405, 423-24, 269 P.3d 207 (2012).

Courts have long recognized that deciding whether to request a limiting instruction—which may only serve to emphasize damaging evidence—is ordinarily a tactical decision. *See State v. Price*, 126 Wn. App. 617, 649, 109 P.3d 27 (2005) and cases cited therein; *State v. Embry*, 171 Wn. App. 714, 762, 287 P.3d 648 (2012), *review*

6

*denied*, No. 88162-6 (Wash. May 1, 2013), and cases cited therein; *United States v. Gregory*, 74 F.3d 819, 823 (7th Cir. 1996) (characterizing the decision not to request a limiting instruction as "solidly within the accepted range of strategic tactics employed by trial lawyers in the mitigation of damning evidence"). Accordingly, a party who claims deficient performance for counsel's failure to request a limiting instruction must be able to explain why, in the defendant's particular case, the decision was not tactical.

Mr. Nickerson fails to meet this burden. He offers only the bald assertion that the failure to request the instruction was not tactical. This is plainly insufficient.

Because he does not demonstrate ineffective assistance, we need not reach the issue of whether Mr. Nickerson has shown prejudice in light of the substantial evidence against him.

## STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Nickerson raises two additional claimed errors.

First, he claims that two jurors saw him being escorted in handcuffs to a holding cell. He represents that "Judge O'Connor did striked [sic] them out but she did not replaced [sic] them. Instead, she allowed both jurors who saw me to go back in the deliberation room during my trial and until it was over." SAG at 1. There is no reference in the record on appeal to any juror seeing Mr. Nickerson in handcuffs or to any jurors being stricken or excused. Because any facts that support Mr. Nickerson's allegations are

7

outside the record, his argument must be considered, if at all, in a personal restraint petition. *E.g., State v. Norman*, 61 Wn. App. 16, 27-28, 808 P.2d 1159 (1991).

Second, he claims that his wife was allowed to testify against him without his consent, in violation of RCW 5.60.060. RCW 5.60.060 contains two distinct privileges for spouses: a testimonial privilege and a confidential communications privilege. *See* RCW 5.60.060(1).

The testimonial privilege, on which Mr. Nickerson relies, provides that ordinarily a spouse cannot be examined at trial without the other spouse's consent. *See Barbee v. Luong Firm, PLLC*, 126 Wn. App. 148, 155, 107 P.3d 762 (2005). The privilege may be waived and therefore applies only if timely asserted, before the spousal testimony. *State v. Clark*, 26 Wn.2d 160, 168-69, 173 P.2d 189 (1946), *overruled, in part, on other grounds by State v. Burden*, 120 Wn.2d 371, 841 P.2d 758 (1992). The privilege is subject to a common law personal violence exception and cannot be used to bar testimony of an injured spouse in a criminal proceeding against the perpetrator. *State v. Thornton*, 119 Wn.2d 578, 583, 835 P.2d 216 (1992).

Mr. Nickerson does not demonstrate that the privilege was timely asserted. It likely was not, given that this is not a case in which it could be invoked. The privilege may have been waived but it was, in any event, unavailable.

No. 30552-0-III
*State v. Nickerson*

Affirmed.

A majority of the panel has determined that this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, C.J.

_____
Brown, J.

9