**FILE**

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JANUARY 18, 2024

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JANUARY 18, 2024

ERIN L. LENNON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 101124-5 |
| Respondent, | ) | (consol. w/101279-9) |
| v. | ) | |
| EDUARDO S. MARTINEZ, | ) | En Banc |
| Petitioner, | ) | |
| _____ | ) | Filed: January 18, 2024 |
| STATE OF WASHINGTON, | ) | |
| Respondent, | ) | |
| v. | ) | |
| ALEJANDRO S. MARTINEZ, | ) | |
| Petitioner, | ) | |

MADSEN, J.—This is a consolidated case requiring us to determine whether the

trial court abused its discretion in joining the cases of two brothers, Alejandro S.

Martinez and Eduardo S. Martinez, who were charged with sexually abusing their younger stepbrothers in the family home at separate times. Washington's CrR 4.3 permits joinder of offenses and defendants. If properly joined under CrR 4.3(b), the charges are consolidated for trial unless the court orders severance. CrR 4.3.1(a).

The trial court granted the State's motion for joinder, finding that the brothers failed to identify any prejudice so as to outweigh the substantial interest in joining the cases. Both brothers appealed, arguing among other things, that the trial court abused its discretion in ordering joinder. The Court of Appeals affirmed each brother's convictions. Both Alejandro[1] and Eduardo sought review here.

We hold that the trial court abused its discretion when it improperly joined the two cases without first meeting at least one of the two bases for joinder as defined in CrR 4.3(b)(3) and that Alejandro was prejudiced by the joinder. We reverse the Court of Appeals in part and remand for further proceedings.

BACKGROUND

Alejandro Martinez and his younger half-brother Eduardo Salgado Martinez were born in Mexico. In 1993, their mother married a man with three sons, E.P., J.P., and R.P.[2] These children were stepbrothers to Alejandro and Eduardo. That same year, the

---

[1] Given both petitioners share a common surname, we refer to them using their first names. Alejandro uses the name "Alex" in some of his supplemental briefing here and has gone by that name for some time. Because "Alejandro" is in the case caption, we use that name to avoid confusion.

[2] The names of the minor victims are abbreviated throughout.

family moved to the United States and settled in Prosser, Washington. Shortly thereafter, the family broke up; E.P., J.P., and R.P. moved with their father to a nearby town.

In September 1998, J.P. admitted to drawing an explicit picture depicting an adult man having anal sex with an adult woman. J.P. also disclosed that he was sexually abused. J.P. told the officer investigating the claim that he had been sexually abused by Eduardo. Thereafter, E.P. revealed that both Eduardo and Alejandro sexually abused him.

The officer attempted to locate Alejandro and Eduardo. Eventually, the officer traveled to a produce plant where Alejandro worked. Once there, the plant manager stated that they employed a "Ricardo Martinez." Ricardo was revealed to be Alejandro. When the officer met with Alejandro, they discussed the abuse allegation and Alejandro agreed to provide a written statement, which read, "Me, Alejandro, did that with [E.] one time." 2 Rep. of Proc. (RP) (No. 37343-6), at 641, 643. Alejandro did not indicate what "that" was. *Id.* at 741. The officer stated that Alejandro would be charged with first degree child rape but did not arrest Alejandro or book him into jail due to overcrowding.

Alejandro was charged with one count of rape of a child in the first degree against E.P. Eduardo was charged with two counts of rape of a child in the first degree, one count against E.P. and another count against J.P. Neither Alejandro nor Eduardo appeared for their court hearing, and warrants were subsequently issued for their arrests.

The brothers disappeared for approximately 20 years, settling in Connecticut. In November 2018, Eduardo was involved in a car accident. As a result, the Connecticut

3

police discovered the outstanding Washington warrants and associated charges relating to child rape. The original investigating officer was contacted and traveled to Connecticut to transport Eduardo back to Washington. During transport, Eduardo told the officer that he had returned to Washington, but when he learned of the investigation, he went back to Connecticut.

On May 13, 2019, the prosecution proceeded to trial solely against Eduardo. This trial ended in a mistrial based on a violation of Eduardo's right to counsel. Around this time, Alejandro learned of the charge against him and returned to Washington to resolve the matter.

After Eduardo's trial ended in a mistrial, the State moved to join Alejandro's case with Eduardo's case. Over each brother's objections, the trial court granted the State's motion for joinder and found that the brothers failed to identify any specific prejudice so as to "outweigh[] the substantial interest in joinder." Clerk's Papers (No. 37343-6) (CP) at 7.

Following two subsequent mistrials, the parties proceeded to a fourth trial in October 2019. There, E.P. testified that Alejandro raped him only once. J.P. testified that Alejandro never molested him. Both E.P. and J.P. testified that Eduardo sexually abused them on multiple occasions. The brothers were found guilty as charged.

Alejandro and Eduardo appealed. The Court of Appeals affirmed their convictions but remanded for resentencing. The court held that no abuse of discretion occurred when the brothers' cases were joined. *State v. Martinez*, 22 Wn. App. 2d 621, 639, 512 P.3d 1

4

(2022) (published in part); *Martinez*, No. 37344-4-III, slip op. (unpublished portion) at 21-22, https://www.courts.wa.gov/opinions/pdf/373444_unp.pdf. The brothers sought discretionary review here. We granted review and consolidated the cases. 200 Wn.2d 1016 (2022).

ANALYSIS

1. Standard of Review

A trial court's decision on a pretrial motion for joinder is reviewed for abuse of discretion. *State v. Bluford*, 188 Wn.2d 298, 305, 393 P.3d 1219 (2017).[3] A trial court abuses its discretion when its decision is "'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. Barry*, 184 Wn. App. 790, 802, 339 P.3d 200 (2014) (quoting *State v. Rice*, 48 Wn. App. 7, 11, 737 P.2d 726 (1987)). "[J]oinder should not be allowed . . . if it will clearly cause undue prejudice to the defendant." *Bluford*, 188 Wn.2d at 307. A reviewing court considers only the facts known to the trial judge when the joinder motion is argued, not facts later developed at trial. *Id.* at 310.

---

[3] We recognize that there has been some confusion over the proper standard of review when reviewing CrR 4.3 joinder decisions. Some cases have stated that these issues are reviewed de novo, apparently stemming from a statement from *State v. Hentz*, 32 Wn. App. 186, 189, 647 P.2d 39 (1982), *rev'd on other grounds*, 99 Wn.2d 538, 663 P.2d 476 (1983). We take this opportunity to clear up any remaining uncertainty: the standard of review of trial court motions granting or denying joinder motions is abuse of discretion. *Bluford*, 188 Wn.2d 305; *State v. Thompson*, 88 Wn.2d 518, 525, 564 P.2d 315 (1977), *overruled on other grounds by State v. Thornton*, 119 Wn.2d 578, 835 P.2d 216 (1992). Because joinder must first be allowable under CrR 4.3, part of a reviewing court's analysis is interpreting court rules, which is a legal question and subject to de novo review. *Bluford*, 188 Wn.2d at 310; *Nevers v. Fireside, Inc.*, 133 Wn.2d 804, 947 P.2d 721 (1997) ("[J]ust as the construction of a statute is a matter of law requiring de novo review, so is the interpretation of a court rule.").

Joinder is governed by CrR 4.3. Much of our existing case law discusses joinder of offenses, which is governed by CrR 4.3(a). That rule also covers joinder of defendants. *See* CrR 4.3(b). Existing case law interpreting the rule typically involves defendants who are appealing the denial of a motion seeking severance after their separate offenses are joined. However, Alejandro and Eduardo did not seek severance; rather, they objected to and later sought review of the trial court's grant of the State's motion to consolidate their cases. The rules are analyzed similarly. In *Bluford*, this court clarified that both prejudice to the defendant and judicial economy are relevant considerations in joinder decisions. 188 Wn.2d at 305. Although *Bluford* analyzed CrR 4.3(a), the analysis is similar under CrR 4.3(b).

2. The Trial Court Abused its Discretion by Joining the Brothers' Cases

Primarily at issue in this case is whether the trial court abused its discretion in joining the cases of these two brothers. When analyzing whether joinder is proper, we look at whether the defendants' cases were joined in accordance with CrR 4.3(b), the rule governing joinder of defendants, provides:

> Two or more *defendants* may be joined in the same charging document:
>         . . . .
>         (3) When, even if conspiracy is not charged and all of the defendants are not charged in each count, it is alleged that the several offenses charged:
>         (i) were part of a *common scheme or plan*; or
>         (ii) were *so closely connected* in respect to *time, place* and *occasion* that it would be difficult to separate proof of one charge from proof of the others.

(Emphasis added.)

After Eduardo's first trial ended in a mistrial, the State filed a motion to join its cases against Alejandro and Eduardo. The State argued that "[t]he charges and the evidence in the defendants' cases are virtually identical" and that "proceeding with one trial, as opposed to two, would be beneficial and minimize the number of occasions that J.P. and E.P. must testify as to the sexual abuse they suffered as young children." CP at 304. The State further argued that the alleged offenses are "so closely connected in time, place, and occasion that it is impossible to separate proof of the charge against Alejandro from proof of the charges against Eduardo." *Id*. at 303. Relying on *Bluford*, Alejandro argued that prejudice to a defendant is relevant to a decision on joinder just as it is to a decision on severance.[4] *Id*. at 4-6.

At the hearing on the motion for joinder, the State argued that Alejandro's and Eduardo's defenses were consistent because Eduardo testified at his first trial and denied molesting J.P. and E.P. Alejandro argued that his defense was inconsistent with Eduardo's defense because he was not present during the original interview in 1998 that led to the constitutional violation and mistrial. Alejandro also argued he would be prejudiced because he did not know whether Eduardo would testify at the second trial.

The trial court granted the State's joinder motion. In its order, the trial court judge concluded that "[t]here is no manifest prejudice that would result in the requested joinder

---

[4] The petitioners both argue that the trial court erred when it granted joinder, however, they set forth differing bases for the error. Alejandro offered a rule-based argument, contending his case was improperly joined with Eduardo's case under CrR 4.3. Meanwhile Eduardo set forth a constitutional argument, contending joinder violated his constitutional right to due process. We address both arguments in turn.

7

and the resulting mandatory consolidation of these matters" because "Bluford's language, when considered in the context of the facts of that case (the joinder of multiple disparate charges against an individual defendant), does not compel a different result in the matter at bar." *Id*. at 8. The trial court noted that "difficulties that foreseeably inure in mounting a joint defense . . . , while concededly not insignificant . . . , are legally insufficient as a basis to resist the motion." *Id.*

In his petition for review here, Alejandro argues that no Washington court has previously considered whether two defendants may be joined for trial based on separate rapes that occurred at different times. He contends that when two defendants are not charged as accomplices or conspirators, CrR 4.3(b)(3) provides only two possible bases for joinder—neither of which was satisfied in his case. In its briefing to the Court of Appeals, the State contends that Alejandro and Eduardo devised a common scheme or plan to sexually abuse E.P. and J.P. when their mother and stepfather were away from the home.[5] The State maintains that the rapes were closely connected in respect to time, place, and occasion because both victims were raped one after the other, in the same trailer, and by their older stepbrothers.

The trial judge's order failed to meaningfully analyze CrR 4.3(b), stating, "Upon initial review . . . Superior Court Criminal Rule . . . 4.3(b), and the existing caselaw [sic], including but not limited to *State v. Moses*, [193 Wn. App. 341, 360, 372 P.3d 147, *review denied*, 186 Wn.2d 1007 (2016)] all aug[u]r in favor of joinder." *Id*. at 7. The

---

[5] The State incorporated its arguments and briefing on the issue of joinder from its brief to the Court of Appeals in its supplemental briefing in this court.

judge then went on to address the issue of prejudice. While prejudice is a consideration in determining joinder, CrR 4.3 dictates when a court may order joinder. The trial court failed to discuss whether Alejandro's rape charge against E.P. and Eduardo's rape charges against E.P. and J.P. were part of a common scheme or plan or were closely connected.

While CrR 4.3 is aimed at judicial economy, the rule cannot be interpreted beyond its plain language. *See Bluford*, 188 Wn.2d at 310-11. The plain language of the rule states that unless a conspiracy is charged, defendants may be joined *only* if the charges were part of a *common scheme* or *plan* or if the charges were *closely connected* in respect to time, place, and occasion. When determining the existence of a common plan, we should look to factors such as whether the events all occurred in the same place, within a short time period, and with the same modus operandi. *United States v. Scott*, 413 F.2d 932, 935 (7th Cir. 1969); *see State v. Kinsey*, 20 Wn. App. 299, 305, 579 P.2d 1347 (1978) (defendant who was charged with aiding and abetting the sale of heroin was not prejudiced by being tried with another defendant who was charged with aiding and abetting sale of heroin in a separate transaction since both sales occurred in the same apartment and were handled in the same manner). There should be such a substantial overlap in the evidence that it would be difficult to separate proof of one offense from the other. *Jackson v. United States*, 623 A.2d 571, 581 (D.C. 1993).

Unlike joinder of offenses, joinder of defendants should not be granted when the offenses charged are solely of the same or similar character. *United States v. Ashley*, 905

9

F. Supp. 1146, 1163 (E.D.N.Y. 1995). There should be some greater "logical relationship" between the occurrences. *United States v. Sarkisian*, 197 F.3d 966, 976 (9th Cir. 1999). *State v. Harkness* explores the nuances of a common scheme or plan in the context of joinder. 196 Wash. 234, 239, 82 P.2d 541 (1938). In *Harkness*, two brothers and a physician were charged with multiple counts of forging prescriptions to procure narcotics. *Id*. at 235-36. As to the physician, this court determined that the charges were properly joined with either brother "because of the close connection between the issue of a false prescription and its presentation with knowledge of its falsity." *Id.* at 238. The brothers, however, were improperly joined. *Id.* The court reasoned that "[w]hile [the brothers] are charged with crimes of the same class, the crimes are alleged to have been committed *independently* and at *different times*. The crimes are related to each other only by the fact that the prescriptions used were issued by the same physician." *Id.* (emphasis added).

As *Harkness* illustrates, the commonality of defendants' actions is not the focus; rather, it is whether those acts were committed *together*. *Id.* While Alejandro and Eduardo committed similar acts, each brother acted independently and was charged with separate criminal acts occurring at separate times. The charges against Alejandro and Eduardo are related to each other only by the fact that their victims were similar—their younger stepbrothers. Moreover, Alejandro allegedly molested E.P. once and there was no claim that he ever molested J.P., while Eduardo was accused of multiple acts of molestation against both E.P. and J.P. The State fails to point to evidence in the record

10

that shows the brothers acted in concert or that there was aid or collusion between the brothers. *See* CrR 4.3(b)(3). Vague references to both brothers are not sufficient to affirmatively demonstrate a coordination of efforts. As the Court of Appeals stated in *State v. Harris*, "[T]he State has fallen into the common error of equating acts and circumstances which are merely similar in nature with the more narrow common scheme or plan." 36 Wn. App. 746, 751, 677 P.2d 202 (1984). While each rape occurred when the children's parents were not home, Alejandro and Eduardo did not commit the offenses together or at the same time. Alejandro committed rape independently from Eduardo and was accused of abusing only E.P. Eduardo committed rape independently from Alejandro when he sexually abused both J.P. and E.P. *See State v. Wilson*, 1 Wn. App. 2d 73, 81, 404 P.3d 76 (2017) (holding incidents of sexual abuse of two victims were not "'markedly and substantial similar'" to show a common scheme or plan when one victim reported *recurring incidents* of sexual abuse and the second victim reported an *isolated* instance (quoting *State v. Gresham*, 173 Wn.2d 405, 422, 269 P.3d 207 (2012))). The record does not reflect that the brothers acted together or that they colluded together. *See* CrR 4.3(b)(3)(i).

While it may have been burdensome here for the victims to testify more than once if the cases were not joined, the proof for the charges against Alejandro and Eduardo were not so difficult to separate as to warrant joinder. *See* CrR 4.3(b)(3)(ii). Neither brother was charged with conspiracy. Thus, the joinder requirements of CrR 4.3(b)(3) were not satisfied.

11

A trial court abuses its discretion if it "relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." *Gildon v. Simon Prop. Grp., Inc.*, 158 Wn.2d 483, 494, 145 P.3d 1196 (2006); *see State v. Smith*, 144 Wn. App. 860, 864, 184 P.3d 666 (2008) (concluding that a trial court acted without authority when it failed to follow CrR 7.8 procedures). Here, the trial court's joinder decision was based on an erroneous reading of CrR 4.3(b), and, therefore, it abused its discretion when it failed to consider whether there was evidence of a common scheme or plan or whether the evidence against each brother would be difficult to separate. *See Gildon*, 158 Wn.2d at 494. However, the analysis does not stop there; the rule also contemplates the potential for undue prejudice. Therefore, we take this opportunity to analyze whether Alejandro was prejudiced by the joinder.

3. Joinder Resulted in Prejudice to Alejandro

An important part of the analysis under CrR 4.3(b) is determining whether prejudice would result from joining certain cases together while also recognizing the need for judicial economy. "[J]oinder and severance[] are based on the same underlying principle, that the defendant receive a fair trial untainted by undue prejudice." *State v. Bryant*, 89 Wn. App. 857, 865, 950 P.2d 1004 (1998); *see also Bluford*, 188 Wn.2d at 307 (finding that our courts have recognized the close relationship between joinder and severance and have held that joinder should not be allowed if it will clearly result in undue prejudice to the defendant). Therefore, it is necessary when analyzing joinder

under CrR 4.3(b), to also consider prejudice to the defendants. To do otherwise would overlook the rule's underlying purpose, which is to provide a defendant with a procedural safeguard against the potential for manifest prejudice if their case is joined with another.

As the moving party for joinder, the burden is on the State to comply with the requirements of CrR 4.3(b). It appears that the trial court abused its discretion in granting joinder under the rule. Nevertheless, when a defendant argues that their right to a fair trial was violated, as in this case, the burden falls on the defendant to show prejudice.[6]

Alejandro argues that joinder of his case with Eduardo's caused undue prejudice and urges this court to apply the factor test in *Bluford*. The State added that all of the *Bluford* factors weighed in favor of joining the defendants. However, *Moses* is the relevant test for joinder of defendants.

The Court of Appeals determined that *Bluford* applies to joinder of *offenses*—not joinder of *defendants*. The court recognized that

> [the *Bluford*] factors relate to the risk of prejudice where an individual defendant offers different defenses to different counts, detracting from the credibility of the defenses, or where multiple charges against an individual defendant invite the jury to cumulate evidence or infer a criminal disposition. *They are not necessarily the same risks of prejudice likely to be present in a joinder-of-defendants situation*.

---

[6] The posture of this case is distinct from a motion to sever or a motion to resist joinder at the beginning of trial. When a defendant resists joinder at the end of trial, they are effectively arguing that they have been deprived of their right to a fair trial. Therefore, the burden shifts to the defendant to show they were prejudiced by the joinder. *See State v. Grenning*, 169 Wn.2d 47, 57, 234 P.3d 169 (2010) ("An error in a trial is not grounds for reversal unless the error was prejudicial to the defendant.").

*Martinez*, 22 Wn. App. 2d at 635 (emphasis added). Instead, the court considered the *Moses* factors for determining specific prejudice when multiple defendants request severance. That case clarified that specific prejudice resulting from joinder of a defendant's trial with a codefendant may be demonstrated by showing

> "(1) antagonistic defenses conflicting to the point of being irreconcilable and mutually exclusive; (2) a massive and complex quantity of evidence making it almost impossible for the jury to separate evidence as it related to each defendant when determining each defendant's innocence or guilt; (3) a co-defendant's statement inculpating the moving defendant; (4) or gross disparity in the weight of the evidence against the defendants."

*Moses*, 193 Wn. App. at 360 (internal quotation marks omitted) (quoting *State v. Canedo-Astorga*, 79 Wn. App. 518, 528, 903 P.2d 500 (1995)).

Here, Alejandro contends that *Moses* is inapplicable because he and Eduardo were not charged as accomplices or conspirators to the same crime; they were charged with wholly separate criminal acts. Relying on RCW 10.37.060,[7] Alejandro claims that *Bluford* equally applies to joinder of defendants. But that statute speaks only to the *procedure* in which charges may be joined and explains *how* offenses may be joined. The statute does not address prejudice.

Alejandro also cites *State v. Galeana Ramirez*, 7 Wn. App. 2d 277, 432 P.3d 454 (2019) (published in part), as supporting the application of *Bluford*. *Ramirez*, however, is a partially published opinion, and the support Alejandro cites is in the unpublished

---

[7] RCW 10.37.060 provides that "[w]hen there are several charges against any . . . persons, for the same act or transaction, or for two or more acts or transactions connected together, or for two or more acts or transactions of the same class of crimes or offenses, which may be properly joined, instead of having several indictments or informations the whole may be joined in one indictment, or information, in separate counts."

portion of the opinion. Under GR 14.1(a), "[u]npublished opinions of the Court of Appeals have no precedential value and are not binding on any court." We believe that *Moses* provides the more relevant test when considering joinder of defendants; however, we also note that *Moses* was considering *severance* rather than *joinder* and should be read in conjunction with the requirements for joinder of defendants set forth in CrR 4.3(b).

In *Moses*, the Court of Appeals affirmed the denial of a motion to sever the cases of two criminal defendants. 193 Wn. App. at 359-61. When caring for their five-year-old family member, the defendants physically punished and withheld food from the child, resulting in malnourishment and hospitalization. *Id.* at 348. The defendants were charged and convicted of criminal mistreatment. *Id.* at 346. On appeal, one defendant argued that the trial court erred when it declined to sever the case "because redacting [the other defendant]'s portion of their joint interview with [a detective] did not eliminate all prejudice to him when it was admitted at trial against [his codefendant]." *Id.* at 359. Recognizing that severance and joinder are analyzed in a similar manner, the Court of Appeals applied the four factors listed above and concluded that the trial court did not abuse its discretion in denying the motion to sever. *Id.* at 361. The test in *Moses* should similarly be applied here.

### A. Application of the *Moses* Factors to Alejandro

Applying the *Moses* factors, we conclude that joinder prejudiced Alejandro. We address each factor in turn. First, Alejandro and Eduardo did not have antagonistic defenses. Both brothers denied the charges that they sexually abused either E.P or J.P.

Second, "the mere fact that evidence admissible against one defendant would not be admissible against a codefendant if the latter were tried alone does not necessitate severance." *State v. Bythrow*, 114 Wn.2d 713, 721, 790 P.2d 154 (1990). Instead, we "focus on the ability of the jury to isolate the evidence." *Id*. Here, the trial court's instructions to the jury are relevant for purposes of our analysis. The trial court provided 16 jury instructions. The first instruction read, in relevant part, that "[e]ach party is entitled to the benefit of *all* of the evidence." CP at 130 (emphasis added). This instruction did not require the jury to segregate the evidence as to each brother's crime. The fourth instruction, stated, in part, "Your verdict on one count as to one defendant should not control your verdict on any other count or as to the other defendant." *Id*. at 134. But, this jury instruction did not preclude the jury from considering evidence of one brother's rapes as evidence against the other. The jury instructions, E.P.'s and J.P.'s lengthy testimonies, the large amount and complexity of evidence, and the disparity in the weight of the evidence between Eduardo and Alejandro strongly support Alejandro's claim of undue prejudice.

ER 403 is also relevant here and provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of *unfair prejudice*, confusion of the issues, or misleading the jury." (Emphasis added.) The Court of Appeals acknowledged that "ER 403 *could* apply" in this context. *Martinez*, 22 Wn. App. 2d at 634 (emphasis added). The rule would prohibit evidence of Eduardo's rapes at a separate

16

trial for Alejandro absent evidence that the brothers acted in concert or as part of a common scheme or plan.

Further, while Eduardo's confession to law enforcement that he fled Washington when he learned of the investigation into the allegations of sexual abuse did not directly inculpate Alejandro, his confession implicitly incriminated Alejandro because it suggested that Alejandro also fled to Connecticut when he learned of the investigation. Because Eduardo's statement to law enforcement implicitly inculpated Alejandro, this evidence also weighs against joinder.

Finally, as to the fourth factor, there is a gross disparity in the weight of the evidence between Alejandro and Eduardo. When one case is remarkably stronger than the other, severance is proper. *State v. Russell*, 125 Wn.2d 24, 63-64, 882 P.2d 747 (1994). Based on the record, it is clear that the case against Eduardo is stronger than that against Alejandro. Both E.P. and J.P. alleged that Eduardo sexually abused them. They both heard each other crying during Eduardo's abuse, and E.P. recalled a specific moment where Eduardo raped J.P. in the bathroom. On the other hand, J.P. alleged and testified that Alejandro never abused him. Only E.P. alleged that Alejandro raped him and that he could only recall one incident in which the abuse occurred, and J.P. did not witness Alejandro raping E.P.

We conclude that joinder of Alejandro's trial with Eduardo's trial caused undue prejudice to Alejandro under the *Moses* factors.[8]

---

[8] Though *Moses* is concerned with joinder of defendants, we could reach the same result under *Bluford*. First, the prosecution's case against Eduardo for first degree child rape was stronger

4. Eduardo's Due Process Rights Were Not Violated

Eduardo claims that the notion of fundamental fairness is essential to the due process clause of the United States Constitution and the Constitution of the State of Washington. U.S. CONST. amend. XIV, § 1; WASH. CONST. art. I, § 3. He argues he was denied fundamental fairness when the State moved to consolidate the two cases after a mistrial occurred toward the end of trial and the court granted the motion. Eduardo contends the government should not have been allowed to take advantage of a mistake one of its witnesses made while on the stand that resulted in a mistrial and that "amount[ed] to a test run" of how the case would go. Pet. for Rev. (No. 101124-5), at 11 (Eduardo Martinez).

This court reviews an alleged constitutional challenge de novo. *In re Det. of Hatfield*, 191 Wn. App. 378, 396, 362 P.3d 997 (2015). Although the trial court erred in granting joinder of the two cases, not every trial error will rise to the level of a constitutional due process violation. *See Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) (holding that erroneously admitted evidence in conjunction with a prejudicial jury instruction did not rise to the level of a due process

---

than its case against Alejandro. The evidence reveals that Eduardo sexually abused both E.P. and J.P., while E.P. alleges that Alejandro raped him only once and did not abuse J.P. Because E.P. and J.P. testified that Eduardo's conduct was more extensive than Alejandro's, the strength of the State's evidence as to Eduardo is greater. Second, the brothers' defenses are clear: they both denied sexually abusing their stepbrothers. Similar to *Moses*, the jury instructions under the third *Bluford* factor permitted the jury to consider the evidence of one brother's rapes and consider it against the other brother. Fourth, the evidence is not cross admissible because there is no evidence of a common scheme or plan between Alejandro and Eduardo to sexually abuse E.P. and J.P.

violation); *United States v. Lopez-Alvarez*, 970 F.2d 583, 588 (9th Cir. 1992) (noting that when evidence is excluded on the basis of an improper application of state evidence rules, the defendant must demonstrate the excluded evidence was important to his defense to find a constitutional violation).

Eduardo cites to *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982), to support his statement that the police officer acted intentionally in hopes of forcing Eduardo's attorney into "making what has been described as a Ho[b]son's choice." Pet. for Rev. (No. 101124-5), at 11 (Eduardo Martinez). The United States Supreme Court in *Kennedy* held, "Only where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after having succeeded in aborting the first on his own motion." 456 U.S. at 676. Although Eduardo is not specifically challenging the trial judge's decision not to bar retrial based on double jeopardy, even if he was, Eduardo still fails to show that the witness intended to cause a mistrial or acted in bad faith. In fact, the trial court judge stated that he did not think the witness had any bad intent or poor motive when he made the statements warranting a mistrial. 1 RP (No. 37344-4) (May 13, 2019) at 241. Thus, we find that Eduardo's due process rights under both the United States Constitution and Washington Constitution were not violated.

Eduardo also cites *State v. Lively*, 130 Wn.2d 1, 19, 921 P.2d 1035 (1996), arguing that the court must consider the totality of the circumstances in determining whether a defendant has been denied "fundamental fairness" by the State's action. In *Lively*, the

19

defendant claimed her due process rights were violated based on outrageous governmental conduct. There, among other things, police officers were actively luring recovering alcoholics to commit illegal acts. This court found that their actions constituted outrageous conduct. We noted that mere deceptive government action alone is not sufficient to find reversible error. Rather, due process protection "is reserved for only the most egregious circumstances." *Id*. at 20. *Lively* is not analogous to the facts here. The officer here was not instigating crime but was a witness on the stand. The trial judge found that the officer's offending statements were made by mistake. This conduct falls far short of the outrageous conduct in *Lively*. We do not find the actions in this case violated Eduardo's due process rights.

     5. <u>Joinder Did Not Prejudice Eduardo</u>

In his supplemental brief, Eduardo also argues the trial court erred when it failed to follow CrR 4.3(b) when it joined his case with Alejandro's. As discussed above, the trial court failed to meaningfully analyze the requirements of CrR 4.3(b)(3) to determine whether there was a common scheme or plan or the offenses were so closely connected in respect to time, place, and occasion that it would be difficult to separate proof on one charge from proof of the others and whether the State established that no undue prejudice would result from joining the brothers for trial.

Applying the *Moses* factors, Eduardo and Alejandro did not have antagonistic defenses, which weighs against finding prejudice. However, the jury instructions did not

prohibit the jury from considering evidence of one brother's rapes as evidence against the other and thus the second factor weighs in favor of finding prejudice.

The third factor, which looks at whether a codefendant made a statement inculpating the defendant, does not weigh in favor of finding prejudice. As described above, it was Eduardo who made an incriminating statement potentially prejudicing Alejandro by suggesting Alejandro may have fled to Connecticut with him. But Alejandro made no statements inculpating Eduardo.

Lastly, it is true a gross disparity in the weight of the evidence against the defendant and codefendant exists, however, the weight of the evidence in this case is against Eduardo. *See State v. Embry*, 171 Wn. App. 714, 731, 287 P.3d 648 (2012) (finding that the defendant was not prejudiced by a joint trial because there was strong evidence admissible against him whether or not he was jointly tried). Here, Eduardo was convicted of two counts of rape of a child in the first degree, both E.P. and J.P. testified that they were sexually abused by Eduardo on multiple occasions, whereas only E.P. testified that he was sexually abused by Alejandro on one occasion. Considering all the factors together, we find no prejudice.

CONCLUSION

CrR 4.3(b) sets forth factors in which joinder of defendants is appropriate. Multiple defendants may be joined if the offenses were part of a common scheme or plan or were so closely connected in respect to time, place, and occasion. We find that Alejandro, but not Eduardo, was prejudiced by the joinder. We also hold that Eduardo's

21

constitutional right to due process under the Washington or United States Constitutions was not violated by the trial judge's error in joining the two cases.  We reverse the Court of Appeals in part and remand Alejandro's case to the trial court for further proceedings.

_____
Madsen, J.

WE CONCUR:

_____
González, C.J.

_____
Johnson, J.

_____
Owens, J.

_____
Stephens, J.

_____
Gordon McCloud, J.

_____
Yu, J.

_____
Montoya-Lewis, J.

_____
Okrent, J.P.T.